380 So.2d 457 (1980)
Brady Otis BYRD, Appellant,
v.
STATE of Florida, Appellee.
No. NN-303.
District Court of Appeal of Florida, First District.
January 23, 1980.
*458 Clinton H. Coulter, Jr. of Duvall & Coulter, Tallahassee, for appellant.
Jim Smith, Atty. Gen., A.S. Johnston, Asst. Atty. Gen., for appellee.
ERVIN, Judge.
Byrd appeals his conviction for possession of narcotics found inside his car following a warrantless search.
Patrolling officers received information by radio that a white female had been possibly abducted by two black males and placed into a white Lincoln Continental automobile at a certain location in Tallahassee. Sometime later a second BOLO was received by them pertaining to the theft of a purse in the general area where the abduction was believed to have occurred. It gave also a general description of two black males, similar to the description of the two suspects provided in the prior BOLO. The officers stopped a white Continental automobile. The driver, appellant, was questioned, and one of the officers, while standing outside the car, saw what appeared to *459 be a purse in the back seat.[1] The officer asked appellant if he could check the purse and was told to go ahead. Upon opening the passenger's door to the automobile the officer saw "marijuana roaches" in an open ashtray. Defendant was placed under arrest, the automobile searched and additional narcotics were found in other parts of the car.
Appellant first argues that his initial detention was invalid since the information received over radio was based on an unverified informant's tip. There is language in St. John v. State, 363 So.2d 862 (Fla. 4th DCA 1978) which provides support to appellant's argument. In St. John, the court stated: "If the police received the bolo information from some unknown tipster, it would not carry the credibility necessary to justify reliance thereon." Id. at 863. We consider this statement much too broad. We note that the Fourth District Court of Appeal, in announcing its rule, relied upon the decision of the Second District Court of Appeal in State v. Hendry, 309 So.2d 61 (Fla. 2d DCA 1975). The Hendry decision, however, was later receded from by the Second District Court of Appeal in State v. Hetland, 366 So.2d 831 (Fla. 2d DCA 1979), where the court held that an anonymous tip can provide the basis for a valid stop so long as the information carries enough indicia of reliability to justify the stop. 366 So.2d at 838-39. We note additionally that the language stated by the Fourth District Court of Appeal in St. John appears to have been implicitly disapproved by that court's later decision in Isham v. State, 369 So.2d 103, 104 (Fla. 4th DCA 1979), holding that the police had the right and even a duty to investigate a telephone call received from an anonymous informant. It struck down, however, the search following the encounter because the information relayed did not suggest that the defendant was armed with a dangerous weapon and there existed neither consent nor probable cause to search.
A stop of an automobile  as opposed to a search  is not necessarily analyzed in terms of arrest, probable cause for arrest, or warrants based on probable cause. If the stop is prompted not by probable cause, but by an officer's suspicion that criminal activity may be present, the legality of the stop is then measured by the Fourth Amendment's general proscription against unreasonable searches and seizures. Terry v. Ohio, 392 U.S. 1, 17, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889 (1968); United States v. Brignoni-Ponce, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). The reasonableness of the officer's conduct is in turn determined by balancing the violation of the individual's privacy rights against the public's interest in preventing crime. At a suppression hearing an officer should be able to "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that" criminal activity is afoot. Terry v. Ohio, supra, 392 U.S. 21, 88 S.Ct. 1880. The "articulable" facts inducing the stop need not be directly observed by the officer. They may be furnished to him by a known informant, and if the information provided carries enough indicia of reliability, a stop will not be invalidated. Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). Other cases have permitted police encounters with individuals or vehicles even though the information provided came from an anonymous source and was unrelated to the suspect's possession of a dangerous weapon. United States v. Unverzagt, 424 F.2d 396 (8th Cir.1970); United States v. Hernandez, 486 F.2d 614 (7th Cir.1973), cert. den., 415 U.S. 959, 94 S.Ct. 1488, 39 L.Ed.2d 574 (1974); State v. Chatmon, 9 Wash. App. 741, 515 P.2d 530 (1973). And see general discussion in State v. Hetland, supra at 837-38.
The above rules apply only to the initial encounter  not to a search. Although a stop of a vehicle may under particular circumstances be reasonable even though probable cause does not exist, a further intrusion may not be judicially condoned unless consent is given by the occupant. United States v. Brignoni-Ponce, supra, 422 U.S. at 881-82, 95 S.Ct. at 2580-81.
*460 We conclude there is no necessity, as stated in St. John v. State, supra, that the information contained in a BOLO be provided from a known informant so long as the other criteria previously mentioned are present. We decline to follow the rule announced in St. John.
The stop in the present case, although based upon information received from an unknown source, was not unreasonable since the detaining officer was able to articulate facts at the suppression hearing which gave rise to his reasonable belief that criminal activity was afoot. The automobile and its occupant matched the description previously furnished in the BOLO. As such, the information carried "enough indicia of reliability" to justify the initial intrusion.
There is nothing in the record reflecting that defendant did not freely and voluntarily consent for the officer to enter the car. At the hearing the officer stated that he asked defendant if he might enter the car to look at that which appeared to be a purse, and the defendant replied that he could. The defendant, as was his privilege, elected not to testify. As a result, there was no challenge by defendant at the hearing that he was required to submit to superior authority. While the officer did not state that he advised defendant he could decline permission, the law is clear that even though a defendant is not informed of his right to withhold consent, a search will be upheld if it appears from a totality of all the circumstances that consent was voluntarily given. See United States v. Watson, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976); Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Accord, State v. Custer, 251 So.2d 287 (Fla. 2d DCA 1971); Dykman v. State, 300 So.2d 695 (Fla. 3d DCA 1974), cert. den., 312 So.2d 742 (Fla. 1975). After the officer was legally inside the car, he could validly seize contraband seen by him in plain view, State v. Ashby, 245 So.2d 225 (Fla. 1971), arrest the defendant for its possession, then conduct a search of the car.
Appellant's reliance upon St. John v. State, 356 So.2d 32 (Fla. 1st DCA 1978) is misplaced. There, as here, the detaining officer had the right to stop defendant's vehicle because the information provided to him gave rise to a well-founded suspicion that criminal activity was present. The searching officer in St. John, however, had no right to enter the automobile, absent consent or probable cause, which were lacking. Consent is of course the distinguishing factor here.
Appellant argues also that the lower court erred in denying his motion to exclude a chemist's report which had not been timely provided to him by the state in its response to his request for discovery. Appellant has failed to demonstrate that the state's delay in providing the report prejudiced him in his defense since the case was continued, and the case was not tried until approximately 90 days following receipt of the laboratory report. A breach of a rule of discovery does not invalidate a conviction in the absence of prejudice. See Richardson v. State, 246 So.2d 771 (Fla. 1971); Collier v. State, 353 So.2d 1219 (Fla. 3d DCA 1977).
Finally, appellant claims that the trial court erred in denying his motion for mistrial since the state failed to provide him with a copy of the amended information upon which he was later adjudged guilty, and in denying his motion in limine to restrict the state's case against the defendant at trial on the original, not amended, information. On the day before trial, defense counsel learned for the first time the information had been amended[2] by increasing the counts in the information from three to four. Nevertheless, despite his knowledge, the attorney, at the outset of trial, announced that he was ready to proceed. If a defendant goes to trial without objecting, he waives his right to object to a failure to arraign or to an irregularity in the arraignment. Fla.R.Crim.P. 3.160(b). *461 See also Lackos v. State, 339 So.2d 217 (Fla. 1976); State v. Caserta, 358 So.2d 1144 (Fla. 4th DCA 1978). Moreover the right of an accused to be furnished a copy of the indictment or information may be waived. McNeal v. Culver, 113 So.2d 381 (Fla. 1959), rev. on other grounds, 365 U.S. 109, 81 S.Ct. 413, 5 L.Ed.2d 445.
We must assume that appellant was not handicapped in the preparation of his defense by the state's failure before trial to supply him with a copy of the amended information once his lawyer, aware of the amended information, represented to the court his intention to go to trial.
AFFIRMED.
ROBERT P. SMITH, Jr., and BOOTH, JJ., concur.
NOTES
[1] The purse was in fact a camera case.
[2] The amended information was filed with the clerk more than 90 days before trial, yet inexplicably defense counsel never received a copy of it.