495 So.2d 809 (1986)
STATE of Florida, Appellant,
v.
Dale K. HEWITT, Appellee.
No. BL-169.
District Court of Appeal of Florida, First District.
September 25, 1986.
Rehearing Denied October 29, 1986.
*810 Jim Smith, Atty. Gen., Maria Ines Suber, Asst. Atty. Gen., Tallahassee, for appellant.
Elizabeth L. White and William J. Sheppard of Sheppard & White, Jacksonville, for appellee.
PER CURIAM.
The State appeals an order of the trial court granting appellee's motion to suppress physical evidence. We affirm, based on the findings and authority set forth by the trial court in the order on review, which we adopt in its entirety as follows:

ORDER
Defendant filed a Motion to Suppress physical evidence (namely, marijuana) seized by the police officer after stop of defendant's auto.
The only witness was the arresting officer (Maxwell) who testified on behalf of the State. The facts are not in dispute.

Facts
Maxwell has been a police officer at Jacksonville Beach for about 12 years.
In the afternoon of September 11, 1985, Maxwell received a message from his secretary that the CI (naming him) had called to advise that a drug deal involving one pound of marijuana and defendant was going down at a Publix parking lot right then. Maxwell tried to contact the CI by telephone but could not reach him at the number *811 left with the secretary, which was a public pay telephone. The message was delivered about 6:00 P.M., and Maxwell arrived at the parking lot about 6:15 P.M.
About 11:00 A.M. that morning, Maxwell had spoken to the CI about the defendant. The CI had never spoken to Maxwell about defendant before. In the conversation CI asked Maxwell if he knew "Crazy Dale," identifying defendant; if Maxwell knew that defendant was dealing in drugs; that there was a possibility he could purchase marijuana from defendant; and that he would see what he could do.
Maxwell had known CI over the past 10/11 years. He had used the CI's information in 8/9 arrests, and had found CI's information reliable. He had used CI's information either a month before or after defendant's arrest. He had also used CI's information about 3 months before defendant's arrest. He has seen CI in person at least three times in 1985. The CI is not a police officer.
Upon driving into the parking lot, Maxwell observed defendant and another man drive into the parking lot in an automobile driven by defendant. He thinks defendant saw him. Maxwell knows defendant. About 7/8 years ago a search warrant on the premises where defendant resided had been issued, but defendant was not arrested. Maxwell spoke to defendant several months prior to September 11, 1985 and told him that one day he was going to get caught selling drugs. At that time defendant told him he was leaving town. Maxwell also spoke with defendant a month or two prior to that conversation.
Defendant parked his car in the parking lot. He and his passenger got out and went into the Publix store. About five minutes later, the passenger exited the Publix store, got into his own vehicle and drove away.
Defendant then came out of Publix with a grocery bag, got into his vehicle, and drove in a direction away from his residence.
Maxwell thought what he observed was out of the ordinary because (1) defendant did not drive home with his groceries; (2) the other person had his own car at parking lot and drove away separately. He felt defendant was involved in a drug deal, but had no knowledge if he was buying or selling, but thinks he would have been the seller.
Maxwell concedes that he saw no transaction between defendant and the passenger. He believes that when defendant saw him in the parking lot he did not conclude the transaction. He thought defendant was driving to the passenger's house to conclude the transaction.
Maxwell followed him and after about 16 blocks called for uniform car to stop defendant. Defendant was stopped by Officer Lenz.
Officer Lenz asked defendant for driver's license. Maxwell arrived; took driver's license; told defendant he had reason to believe there were drugs in his vehicle; told defendant to step away from defendant's vehicle. Maxwell was going to his car to get consent to search. Although Maxwell testified defendant was not under arrest, defendant was not free to go at that time. Defendant and Officer Lenz walked toward the officer's police vehicle; defendant was very nervous, almost hyperventilating; defendant struck Officer Lenz and fled.
Maxwell did not pursue defendant, but stayed with defendant's car. Defendant was caught and placed under arrest.
Maxwell intended to search defendant's car with or without the consent. His primary motive was to look for contraband, not weapons. After defendant fled, Maxwell went into defendant's car. There was a brown paper grocery bag on floor of back seat with top folded down. The contents of the bag were not visible without opening the bag. The brown paper bag was different than the bag with groceries, which was white plastic.
There are two issues: First, was there founded suspicion to detain the defendant? *812 Second, was the warrantless search of the defendant's automobile legal?

First Issue
The State asserts there is reasonable suspicion to detain defendant because of the police officer's prior knowledge of the defendant, the tip on the defendant's drug selling activities and his own observation of the defendant's activities at the time and place provided by the tip.
Defendant attacks the tip as double hearsay and contends there was nothing suspicious about defendant's conduct at the Publix parking lot.

The Law
1. In St. John, Jr. v. State, 356 So.2d 32 (Fla. 1 DCA, 1978) a CI told the police officer that defendant had 5-7 pounds of marijuana in a white over blue Chevrolet and gave the license tag number of the car, a brief description of defendant and defendant's address. The police officer had known informant for several years and knew him to be reliable, but did not ask him how or when he had received the information.
Three or four hours later, police officer saw defendant in an automobile in front of address supplied by informant. The automobile matched informant's description.
Based solely on informant's tip, the officer pulled up beside defendant and asked him to step out and show ID. The officer then put his head through an open window and smelled marijuana. He then searched the trunk, finding nothing, and the interior of the car, finding marijuana in a paper sack on the right front floorboard. The officer did not smell or see anything from outside the automobile.
The appellate court held that the officer had the duty to investigate the information given him by the informant, because it gave rise at least to a well founded suspicion that defendant was committing a crime. The police officer was authorized to search to the extent necessary to disclose the presence of a weapon. A general search of the automobile for contraband, however, was impermissible as incident to the lawful detention. To escape suppression, the contraband must have been in plain view or the informant's tip must have been legally sufficient to give the police officer probable cause to believe that the automobile contained contraband (citations omitted).
In 1978, it was necessary that the trial judge make factual findings that the informant was reliable and the information credible, per Aguilar and Spinelli test.
With a dissent, the First District Court of Appeal reversed the Court's failure to suppress the evidence.
2. Another First District Court case, Byrd v. State, 380 So.2d 457 (1980), explored the responsibilities and limitations of a police officer receiving a tip.
Police officers received information by radio that a white female had been abducted by two black males and placed in a white Lincoln Continental. A second BOLO was received concerning a theft in the general area where the abduction was believed to have occurred. It also gave general description of two black males similar to the description of the alleged abductors. The police stopped a white Continental automobile with two blacks. The policeman received permission from the driver to examine what he thought was a purse, but which in fact was a camera case. Nevertheless, upon opening the door, the officer observed "marijuana roaches" in open ashtray. Defendants were arrested, the auto searched and additional narcotics found.
The opinion follows case law with respect to weight that a tip should be given. It cites Isham v. State, 369 So.2d 103 (Fla. 4 DCA, 1979), holding that the police had the right and even a duty to investigate a telephone call received from an anonymous informant. It struck down, however, the search following the encounter because the information relayed did not suggest that the defendant was armed with a dangerous weapon and there existed neither consent nor probable cause to search.
*813 The case explains that if an automobile stop is prompted not by probable cause, but by an officer's suspicion that criminal activity may be present, the legality of the stop is then measured by the Fourth Amendment's general proscription against unreasonable searches and seizures.
"The reasonableness of the officer's conduct is in turn determined by balancing the violation of the individual's privacy rights against the public's interest in preventing crime. At a suppression hearing an officer should be able to `point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that' criminal activity is afoot. (Terry) The `articulable' facts inducing the stop need not be directly observed by the officer. They may be furnished by a known informant, and if the information provided carries enough indicia of reliability, a stop will not be invalidated (Adams v. Williams, 1972). Other cases have permitted police encounters with individuals or vehicles even though the information provided came from an anonymous source and was unrelated to the suspect's possession of a dangerous weapon (citations omitted).
The above rules apply only to the initial encounter  not to a search. Although a stop of a vehicle may under particular circumstances be reasonable even though probable cause does not exist, a further intrusion may not be judicially condoned unless consent is given by occupant. (U.S. v. Brignoni-Ponce, 422 U.S. 873 881-882; 95 S.Ct. [2574] at 2580-81 [45 L.Ed.2d 607 (1975)])."
3. In the Interest of G.A.R., III, a child, 387 So.2d 404 (Fla. 4 DCA, 1980) involved an anonymous tip to the police, namely:
"A black male, maybe 15 to 20 years of age, riding a green bicycle, wearing, I believe, dark pants and dark shirt  this person appeared suspicious because of the way he was riding his bicycle, he was circulating two or three times, looking into the various warehouses, which were open, although this was a Saturday."
This was found to be sufficiently detailed to raise an inference that it is accurate.
The case also contained the following guidelines:
 the propriety of the investigatory stop and detention must be determined in light of all of the information known to the officer and with due regard for the maxim that a trained law enforcement officer may be "  able to perceive and articulate meaning in given conduct which would be wholly innocent to the untrained observer." Brown v. Texas, 443 U.S. 47, 52, n. 2, 99 S.Ct. 2637, 2641 [n. 2], 61 L.Ed.2d 357 (1979).

Conclusion as to First Issue
The police officer was able to articulate a reasonable basis for his founded suspicion, namely:
(1) He knew defendant dealt in drugs and had warned him recently that such conduct would result in his arrest.
(2) He received a telephone call the same morning from a known reliable informant advising him that defendant was dealing in drugs.
(3) The informant was reliable based on the fact that the officer had known him for about 10 years, had used his information in about 8 arrests, including as recently as 3 months prior to this incident.
(4) The afternoon phone call from the informant was on the same subject and involved the same individual as the morning telephone call, namely, defendant dealing in drugs.
(5) The phone call identified the place where a drug deal was going down at that time.
(6) He went to the place and saw defendant with an unknown passenger. Defendant saw him.
(7) Defendant and the passenger went into Publix. The passenger exited first, without defendant and without any groceries. Passenger left in his own car.
*814 (8) Defendant exited about 5 minutes later with a bag of groceries. Defendant did not go home, but drove his car away from home. Most people go home to put groceries up.
(9) It is out of the ordinary for a person to park a car in a grocery parking lot, get into a car and go somewhere with a known drug dealer, return to the parking lot, go into a grocery store, exit without groceries and without defendant.
As Justice Alderman said in State v. Stevens, 354 So.2d 1244, 1247 (Fla. 4 DCA, 1978):
To justify temporary detention, only "founded suspicion" in the mind of the detaining officer is required (citation omitted). A "founded suspicion" is a suspicion which has some factual foundation in the circumstances observed by the officer, when those circumstances are interpreted in the light of the officer's knowledge. "Mere" or "bare" suspicion, on the other hand cannot support detention (citation omitted). Mere suspicion is no better than random selection, sheer guesswork, or hunch, and has no objective justification (cittions [sic] omitted). There will be borderline cases, of course, in which reasonable men might differ as to whether the circumstances witnessed by an officer gave an objective foundation to his suspicion. Certain facts might then be evaluated to determine whether they reasonably suggested the suspect's possible commission, existing or imminent, of a crime: the time, the day of the week; the location; the physical appearance of suspect; the behavior of the suspect; the appearance and name of operator of any vehicle involved; anything incongruous or unusual in the situation as interpreted in the light of officer's knowledge.
The law is well settled that information from anonymous persons can be considered as the basis of reasonable suspicion for valid stop and frisk. State v. Hetland, 366 So.2d 831 (Fla. 2 DCA, 1979) affirmed by Florida Supreme Court in Hetland v. State, 387 So.2d 963 (1980).
The tip from the CI had more status than an anonymous tip.
The Court finds that Maxwell's founded suspicion is not based solely on the message passed on to him from the CI, but on Maxwell's information about the defendant's involvement in drug selling, his telephone conversation earlier with the same CI about the defendant, and his own observations, as a trained police officer, at the Publix parking lot.
In reaching this conclusion that Maxwell had a founded suspicion for his detention of defendant, I have not overlooked the cases cited by defendant.
Hyatt v. State, 329 So.2d 43 (Fla. 1 DCA, 1976) dealt with probable cause to arrest based upon double hersay [sic], as distinguished from founded suspicion to detain.
Sagonias v. State, 89 So.2d 252 (Fla., 1956) also dealt with the inability to support a warrantless search of a vehicle based on double hearsay.
Terrell v. State, 429 So.2d 778 (Fla. 3 DCA, 1983) gives no details of the officer's independent observations, so it is assumed that relying solely on the tip, he made the warrantless arrest.

Second Issue
The search was warrantless which is a violation per se of the Fourth Amendment prohibition against unreasonable searches and seizures unless it falls within one of the few specifically established and well delineated exceptions, such as:
(1) Search of auto on the highway where there is probable cause to support the search and where it is not practicable to secure a warrant because the automobile can be quickly moved out of the locality or jurisdiction in which the warrant must be sought. Carroll v. U.S.; Coolidge v. New Hampshire; Chambers v. Moroney
(2) Search incident to valid arrest. Chimil v. California
(3) Plain View. Harris v. U.S.
*815 (4) Search in connection with seizure of auto for purposes of forfeiture proceedings. Cooper v. California
The facts of the case do not support exception # 1 because there is no probable cause  Maxwell did not see the drug transaction go down; he did not know if defendant was a buyer or seller; he had no information that placed contraband in the defendant's automobile  it was only a hunch that defendant was probably the seller, but did not conclude the transaction at the Publix parking lot because of Maxwell's presence.
Exception # 3 is not applicable, since the grocery bag was brown paper and Maxwell could not see what was inside.
Exception #4 is not applicable since there is no forfeiture involved.
If the officer had the right to search, it was an incident to a valid arrest under Exception # 2.
F.S. 901.15 limits a warrantless arrest to the following circumstances: (1) the person has committed a felony in the presence of the officer; (2) a felony has been committed and he reasonably believes the person committed it; (3) he reasonably believes that a felony has been or is being committed and reasonably believes that the person to be arrested has committed or is committing it.
The testimony does not support any of these circumstances.
There are three tiers of police-citizen encounters: (a) communication between police and citizens involving no coercion or detention and therefore without compass of the Fourth Amendment; (b) brief seizures that may be supported by reasonable or founded suspicion; (c) full scale arrests that must be supported by probable cause. Wright v. State, 418 So.2d 1087 (Fla. 1 DCA, 1982)
The facts of this case involve an investigatory stop, which is the second level of encounter, and which is authorized by "Florida Stop and Frisk Law", F.S. 901.151 (1979).
When Maxwell took defendant's driver's license, this was in effect, a restraint on liberty, since defendant could not leave without it. State v. Cahill, 388 So.2d 354 (Fla. 2 DCA, 1980); Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). At that point, Maxwell needed probable cause, which he did not have, so the arrest was illegal.
State makes no attempt to justify the search as an incident of a valid arrest, but contends that defendant's attempt to flee provided a breach in causal chain of events purging any search. The State cites State v. Jacobson, 398 So.2d 857 (Fla. 3 DCA, 1981). The Jacobson case was reviewed by the Florida Supreme Court in 476 So.2d 1282 (1985) because of a conflict with Vollmer v. State, 337 So.2d 1024 (Fla. 2 DCA, 1976).
In Jacobson, the defendant was detained for a consensual encounter. He ran when he saw the police officer place handcuffs on a traveling companion. Since he had never been placed in custody or his liberty involuntarily restrained, his flight broke the causal chain of events.
In the instant case, I have found the detention was legal based on founded suspicion. The police officer converted this legal detention to an illegal arrest by a restraint on the freedom of defendant to leave. Therefore, there was no break in causal chain of events when defendant fled from the illegal arrest.
As stated in the Supreme Court's note on page 1287, it approved the decision of the lower court but not the opinion concerning the legality of the stop. Therefore, the issue of flight from an illegal stop is not addressed by the Supreme Court in Jacobson.
Accordingly, this order only responds to the issue raised by defendant's Motion to Suppress and does not affect Count 2 of the Information.
Maxwell testified he was going to search the defendant's car with or without consent. This is a violation of the Fourth *816 Amendment prohibiting [sic] against unreasonable searches.
Further, although the Motion to Suppress mentions $1020 and statements made by defendant, I heard no testimony about money or statements and do not cover those items in this order.

Conclusion as to Second Issue
1. The defendant was arrested when his driver's license was retained by the police officer.
2. Such restraint requires probable cause, which the police officer did not have at that time.
3. The defendant's flight after his arrest is not a break in causal chain of events purging the illegal search.

Philosophy
In reaching the conclusion that the Motion to Suppress should be granted, I am mindful of the public cry for law and order and the allegation of many who are not familiar with the importance of constitutional rights, that judges are too technical when dealing with criminals. It is very tempting when a judge knows that his ruling might free a person who is obviously guilty of a crime to overlook the technicalities. However, the admonition of Mr. Justice Bradley in the 1886 case of Boyd v. United States, 116 U.S. 616, 635, 6 S.Ct. 524, 535, 29 L.Ed. 746, 752 (1886), concerning fourth amendment violations is important to remember:
It may be that it is the obnoxious thing in its mildest and least repulsive form; but illegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviations from legal modes of procedure. This can only be obviated by adhering to the rule that constitutional provisions for the security of person and property should be liberally construed. A close and literal construction deprives them of half their efficacy, and leads to gradual depreciation of the right, as if it consisted more in sound than in substnce [sic]. If it is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachment thereon.
Of more recent vintage is the expression of Justice [sic] McCord of the First District Court of Appeal in the 1974 case of Cotellis v. State, 297 So.2d 625, in reversing the trial court's failure to suppress:
"While we respect the difficulty of the work of our law enforcement officers and the diligence with which they perform their duties for the protection of society, and I abhor the escape (through what some call `legal technicalities') of persons who are caught `red handed', we must also have respect for our constitution and laws designed to protect us all from invasion of our privacy and unreasonable searches and seizures."
ORDERED AND ADJUDGED that the Motion to Suppress the marijuana is hereby granted.
AFFIRMED.
SMITH, SHIVERS and ZEHMER, JJ., concur.