309 So.2d 61 (1975)
STATE of Florida, Appellant,
v.
John A. HENDRY, Appellee.
No. 74-343.
District Court of Appeal of Florida, Second District.
February 14, 1975.
Rehearing Denied March 10, 1975.
Joseph P. D'Alessandro, State's Atty., Louis S. St. Laurent, Chief Asst. State's Atty., and James R. Long, Asst. State's Atty., Fort Myers, for appellant.
Robert E. Pyle, Lake Alfred, and Frank C. Alderman, III, Alderman, Hendry & Wallace, Fort Myers, for appellee.
GRIMES, Judge.
On this appeal from an order of suppression, the evidence reflects that at approximately 11:34 A.M. Trooper Welch of the Florida Highway Patrol was advised by a passing motorist that some people in an automobile in Old Bridge Square had marijuana in their possession. He was given a description of the car and the tag number. Welch did not know the informant, nor did he ascertain the informant's name. The Highway Patrol relayed the information to the Lee County Sheriff's Department.
About forty-five minutes later, Trooper Welch, accompanied by Corporal Copping of the sheriff's department, located a vehicle in Old Bridge Square matching the description Welch had been given. Both officers got out of their cruisers. Appellee and others got out of the subject vehicle and approached the officers. Corporal *62 Copping testified, "At this time I advised them that I would have to detain them, that they were suspected of being in possession of marijuana, and at that time I advised them of their rights and [that] I was detaining them until Agent Matthews got there."
Matthews, a narcotics agent with the sheriff's department, arrived five minutes later. In light of our decision in this case, we need not pass on the propriety of the manner in which the marijuana was later found in appellee's vehicle. In essence, the trial judge concluded that appellee had been illegally detained and that the marijuana which was discovered was a fruit of that illegal detention.
The U.S. Supreme Court in Adams v. Williams, 1972, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612, approved certain temporary police detentions short of arrest when it said:
"In Terry[1] this Court recognized that `a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest.' Id., at 22, 88 S.Ct. at 1880, [20 L.Ed.2d] at 906. The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, Terry recognizes that it may be the essence of good police work to adopt an intermediate response. See id., at 23, 88 S.Ct. at 1881, [20 L.Ed.2d at 907]. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time... ."
In considering the extent to which a tip may play in giving the police the right to temporarily detain, the Supreme Court went on to say:
"Applying these principles to the present case, we believe that Sgt. Connolly acted justifiably in responding to his informant's tip. The informant was known to him personally and had provided him with information in the past. This is a stronger case than obtains in the case of an anonymous telephone tip. The informant here came forward personally to give information that was immediately verifiable at the scene... .
"In reaching this conclusion, we reject respondent's argument that reasonable cause for a stop and frisk can only be based on the officer's personal observation, rather than on information supplied by another person. Informants' tips, like all other clues and evidence coming to a policeman on the scene, may vary greatly in their value and reliability. One simple rule will not cover every situation. Some tips, completely lacking in indicia of reliability, would either warrant no police response or require further investigation before a forcible stop of a suspect would be authorized. But in some situations  for example, when the victim of a street crime seeks immediate police aid and gives a description of his assailant, or when a credible informant warns of a specific impending crime  the subtleties of the hearsay rule should not thwart an appropriate police response."
The passage of Fla. Stat. § 901.151 (1973), commonly known as the "Stop and Frisk" law was precipitated by the U.S. Supreme Court's ruling in Terry v. Ohio, supra. Subsection (2) thereof which deals with "stopping" rather than "frisking" provides:
"(2) Whenever any law enforcement officer of this state encounters any person under circumstances which reasonably indicate that such person has committed, is committing, or is about to commit a violation of the criminal laws of this state or the criminal ordinances *63 of any municipality or county, he may temporarily detain such person for the purpose of ascertaining the identity of the person temporarily detained and the circumstances surrounding his presence abroad which led the officer to believe that he had committed, was committing, or was about to commit a criminal offense." (emphasis added)
At the time Corporal Copping informed appellee that he could not leave, all that Copping or any other officer knew was that forty-five minutes earlier an unknown, untested informant said that occupants of the car from which appellee subsequently emerged had marijuana in their possession. There were no suspicious circumstances observable to the officers which would tend to corroborate the anonymous tip. Without more, we do not believe Corporal Copping encountered appellee under circumstances sufficient to reasonably indicate appellee possessed marijuana and, thereby, justify his temporary detention.
Affirmed.
McNULTY, C.J., and HOBSON, J., concur.
NOTES
[1] Terry v. Ohio, 1968, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889.