398 So.2d 820 (1981)
STATE of Florida, Petitioner,
v.
Tony Howard WEBB, Respondent.
No. 59346.
Supreme Court of Florida.
May 14, 1981.
*821 Jim Smith, Atty. Gen., and Andrea T. Mohel and Paul H. Zacks, Asst. Attys. Gen., West Palm Beach, for petitioner.
Richard L. Jorandby, Public Defender, and Robert C. Fallon, Asst. Public Defender, West Palm Beach, for respondent.
ALDERMAN, Justice.
We have for review the decision of the District Court of Appeal, Fourth District, in Webb v. State, 384 So.2d 210 (Fla. 4th DCA 1980), which conflicts with Hetland v. State, 387 So.2d 963 (Fla. 1980),[1] and Byrd v. State, 380 So.2d 457 (Fla. 1st DCA 1980). The issue before us is whether information given the police from an apparently anonymous informant[2] under the totality of the circumstances provided a reasonable basis for the stop and, since a valid frisk does not inevitably follow from every valid stop, we must separately determine whether the frisk was reasonable. We hold that the stop was proper because the information in the BOLO carried sufficient indicia of reliability so as to give the police officers a reasonable suspicion founded in articulable facts that Webb was the perpetrator of the robberies. We further hold that the frisk was proper since the officers based on the information in the BOLO had reason to believe that they were dealing with an armed and dangerous individual.
The factual basis for the stop and the frisk and for the subsequent arrest is as follows. At a daily briefing session by their superiors, the arresting police officers were told to be on the lookout for an armed robbery suspect who was described as a white male, five feet nine inches, one-hundred thirty pounds, thin build, long blond hair in a ponytail, who had committed two armed robberies at two named drug stores on the two previous days. The officers were further told that the robbery suspect was carrying a black colored gun. They wrote all this information on the back of a "hot sheet" at the time they received it. Approximately six hours after this briefing, the officers saw Webb walking down a street approximately two miles from the scene of the robberies. They stopped him because he matched the BOLO description. Because they had been advised that the robbery suspect was carrying a gun, one of the officers touched Webb's shirt at the waist and found a concealed, fully loaded .32 caliber pistol. Webb was then arrested for carrying a concealed firearm. Later at a lineup, Webb was not identified as the perpetrator of the armed robberies, and no robbery charges were filed against him. He was, however, charged and convicted of the crime of carrying a concealed firearm.[3]
After a hearing on the motion to suppress held to determine whether the officers at the time of the stop had a reasonable suspicion founded in articulable facts that Webb was the perpetrator of the armed robberies and to determine whether the officers were justified in believing that Webb was armed, the trial court denied Webb's motion to suppress the gun. The court concluded that the initial stop was reasonable and that the officers would have taken an unnecessary risk of a shooting if they had sought additional information from Webb prior to the frisk.
The district court, relying primarily on St. John v. State, 363 So.2d 862 (Fla. 4th DCA 1978), reversed on the basis that the BOLO was unreliable and was insufficient to support a reasonable suspicion on the part of the police officers that Webb was the armed robbery suspect. The district court emphasized that there was no testimony at the suppression hearing concerning *822 the source of the information and that when the police stopped Webb, there was nothing suspicious in his appearance or conduct.
Since Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and its companion case of Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), decided over a decade ago, the test for the limited intrusion of a stop and frisk has been reasonableness rather than probable cause.[4]Terry created an exception to the probable cause requirement and thereby granted police officers a greater right to stop and frisk a suspect. To determine reasonableness, the Supreme Court in Terry balanced the limited violation of an individual's privacy against the opposing interests in crime prevention and detection and the police officer's safety. To justify a stop, a police officer must be able to point to specific and articulable facts which, taken together with rational inferences from these facts, reasonably justify the stop. The Court announced the following objective standard by which a reviewing court should judge the reasonableness of the intrusion: "[W]ould the facts available to the officer at the moment of the seizure or the search `warrant a man of reasonable caution in the belief' that the action taken was appropriate?" Terry v. Ohio, 392 U.S. at 21-22, 88 S.Ct. at 1880.
A valid stop does not necessarily mean that there can be a valid frisk. Under the Terry exception, a law enforcement officer, for his own protection or the safety of others, may conduct a pat down to find weapons that he reasonably believes or suspects are then in possession of the person whom he has stopped. Weighing this limited right to frisk, the Supreme Court found the State's proffered justification  the safety of the officer  both legitimate and weighty. Pennsylvania v. Mimms, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977). As pointed out in Terry: "Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties." 392 U.S. at 23, 88 S.Ct. at 1881. When a Terry stop is made, in order to validly frisk the person stopped, "[t]he officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." 392 U.S. at 27, 88 S.Ct. at 1883. However, "[n]othing in Terry can be understood to allow a generalized `cursory search for weapons' or, indeed, any search whatever for anything but weapons. The `narrow scope' of the Terry exception does not permit a frisk for weapons on less than reasonable belief or suspicion directed at the person to be frisked." Ybarra v. Illinois, 444 U.S. 85, 93-94, 100 S.Ct. 338, 343-344, 62 L.Ed.2d 238 (1979).
Four years after Terry, the Supreme Court, in Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), further explained the test of reasonableness as applied to a stop and frisk based on information from an informant. The Court held that an informant's tip, bearing sufficient indicia of reliability, could serve as the basis for reasonable suspicion that criminal activity was afoot. The Court, in reaching its decision, expressly rejected the defendant's argument that reasonable cause for a stop can only be based on an officer's personal observations. It also held that the frisk was valid since the officer had ample reason to fear for his safety because the defendant was reported by the informant to be carrying a concealed weapon. Citing with approval the decision of the United States Court of Appeals, Eighth Circuit, in United States v. Unverzagt, 424 F.2d 396 (8th Cir.1970), the Supreme Court said: "A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at *823 the time." Adams v. Williams, 407 U.S. at 146, 92 S.Ct. at 1923.
United States v. Unverzagt involved a stop and frisk based on a tip from an unknown informant who was never located and whose personal reliability had not been established. The circuit court of appeals held that the information from this unknown informant could serve as a basis for reasonable suspicion and that the officers had a limited right under the circumstances to stop the defendant for investigation. The court further held that the information received relative to defendant's being armed constituted a reasonable basis under Terry for the frisk for weapons.
Until this Court's decision in Hetland v. State, which expressly adopted in its entirety the decision of the District Court of Appeal, Second District, in State v. Hetland, 366 So.2d 831 (Fla. 2d DCA 1979), it was not clear whether under Florida law an anonymous tip could serve as the basis for reasonable suspicion.[5] In Hetland, we held that Florida's "stop and frisk" law imposes no greater standard than the fourth amendment. Employing the federal standards, we concluded that a valid stop and frisk may be based on information obtained from an anonymous tipster if that information appears sufficiently reliable because of the surrounding circumstances. We expressly disapproved St. John v. State insofar as it was inconsistent with Hetland.
In Hetland, two deputies were informed by radio dispatch that an anonymous phone call from an unknown female had been received, advising the authorities that a man named Hetland was on his way to a particularly named bar to shoot someone. The caller described Hetland's features and reported that he was carrying a silver revolver with a black handle. The deputies went to the bar and observed Hetland who fit the caller's description. Hetland's conduct, however, was in no way suspicious. They approached Hetland, asked him his name, and, observing the butt of a gun protruding from Hetland's waistband, one of the deputies reached under Hetland's shirt and took the revolver. He was then arrested for carrying a concealed firearm. Because of the earlier Second District Court of Appeal decision in State v. Hendry, 309 So.2d 61 (Fla. 2d DCA 1975), the trial court granted Hetland's motion to suppress the firearm on the basis that it was obtained from him by an unlawful search and seizure. On appeal, the district court expressly receded from its earlier decision in Hendry and approved the stop and the frisk.
This Court, through its adoption of the district court's opinion in Hetland, held that the fact that the information serving as the basis for the police suspicion comes from an anonymous tip does not in and of itself invalidate a stop based on that information. Our adopted opinion in Hetland discusses the indicia of reliability by which an anonymous tip is judged. Rather than looking just to the source of the tip or an after-the-fact statement directed to the reliability of the source as the Fourth District suggests in the present case, Hetland holds that we may also look to the information provided by the tip and determine its reliability by the specificity of the information and its corroboration by prompt police action finding an individual in the general area of a named location who precisely fits the description given in the BOLO. However, as Hetland points out, a vague description would not justify a law enforcement officer in stopping every individual who might possibly fit that description.
The decision of the District Court of Appeal, First District, in Byrd v. State, 380 So.2d 457 (Fla. 1st DCA 1980), decided prior to our adoption of the district court's decision in Hetland is consistent with Hetland In Byrd, patrolling officers had received information over the radio based on an unverified informant's tip that a white female had been abducted by two black males and had been placed in a white Lincoln Continental automobile at a certain location in *824 Tallahassee. They later received a BOLO pertaining to a purse snatching in this same area by two black males similar to the description of those in the first BOLO. The officers stopped a white Continental, and, while questioning the driver, one of the officers saw what he thought was a purse in the back seat of the Continental. Upon gaining Byrd's consent to check the purse, the officers opened the car door and saw marijuana roaches in an open ashtray. They thereupon arrested Byrd and searched the automobile. Byrd argued that his initial detention was invalid because it was based upon an unverified anonymous tip. The First District held that the articulable facts which the officers should be able to point to at a suppression hearing to show that they were warranted in believing that criminal activity was afoot need not be directly observed by the police officer. Because the automobile and its occupants fit the specific description furnished in the BOLO and because the detaining officer was able to articulate facts at the suppression hearing based on the BOLO which gave rise to his suspicion that Byrd was involved in criminal conduct, the court held that the stop was valid.
Since rendering its decision in the present case, the Fourth District has modified its view regarding BOLOs based on anonymous tips. Adopting the rationale of Hetland and State v. Francois, 355 So.2d 127 (Fla. 3d DCA 1978), cert. denied, 361 So.2d 832 (Fla. 1978), in Isham v. State, 369 So.2d 103 (Fla. 4th DCA 1979), cert. denied, 381 So.2d 770 (Fla. 1980), it held that, based upon an anonymous call to police advising that defendant was on a certain street corner attempting to sell drugs, the police had a perfect right, and perhaps a duty, to investigate the call. The court, although finding the stop valid, held that the frisk was invalid because there was no information to suggest that Isham was armed. It further stated, however, that had the anonymous tip included information that Isham was armed, the frisk would have been justified. See also Romanoff v. State, 391 So.2d 783 (Fla. 4th DCA 1980), wherein the Fourth District upheld a stop and a frisk based on information from an anonymous tip contained in a BOLO.
In Hetland we were confronted with the issue of whether a stop was valid and we utilized the standards announced by the Supreme Court of the United States to hold that it was. Also, through adoption of the district court opinion, we held that for the same reason the stop was valid, so was the frisk. The standard for evaluating the reasonableness of a frisk is whether the officers were justified in believing that the suspect was armed and dangerous. If the tip bears sufficient indicia of reliability and it relates that the suspect is armed and dangerous, then the officer, acting on the tip, is justified in his belief that the suspect is carrying a weapon and may frisk him. For the same reasons that we held that there need not be personal observation by the law enforcement officer of criminal conduct, we also hold that what is required for a valid frisk is not probable cause but rather a reasonable belief on the part of the officer that a person temporarily detained is armed with a dangerous weapon.
The Florida stop and frisk law does employ the term probable cause as the basis for a valid frisk, but this term is not utilized in the same sense that the term is used when referring to arrests or search warrants. This is evident from the bill's title. It is a fundamental rule of statutory construction that legislative intent is the polestar by which the court must be guided, and this intent must be given effect even though it may contradict the strict letter of the statute. Furthermore, construction of a statute which would lead to an absurd or unreasonable result or would render a statute purposeless should be avoided. To determine legislative intent, we must consider the act as a whole  "the evil to be corrected, the language of the act, including its title, the history of its enactment, and the state of the law already in existence bearing on the subject." Foley v. State, 50 So.2d 179, 184 (Fla. 1951) (emphasis added). In determining legislative intent, we must give due weight and effect to the title of *825 section 901.151, Florida Statutes (1977), which was placed at the beginning of the section by the legislature itself. The title is more than an index to what the section is about or has reference to; it is a direct statement by the legislature of its intent. Berger v. Jackson, 156 Fla. 251, 768, 23 So.2d 265 (1945).
Applying these rules of statutory construction to section 901.151, Florida Stop and Frisk Law, there is no doubt that the legislature intended to adopt the federal standards for stop and frisk, and not any stricter standards. This was made abundantly clear in its title where the legislature says that section 901.151 is:
AN ACT relating to "stop and frisk"; authorizing a law enforcement officer to temporarily detain and question a person under circumstances which reasonably indicate that such person has committed, is committing, or is about to commit a criminal offense; permits search of the person detained, to the extent necessary, to disclose if said person is armed, when the officer reasonably believes that said person is armed with a dangerous weapon; provides that said person shall not be detained more than is reasonably necessary for such search unless an arrest is made; providing an effective date. Ch. 69-73, Laws of Florida. (Emphasis added.)
Viewing section 901.151 in the context of its stated purpose to permit officers to temporarily detain and question persons under circumstances reasonably indicating criminal activity, past, present, or imminent, and to frisk where they have reasonable belief that the person detained is armed, it would be unreasonable and contrary to the legislature's intent to require an officer, before he may frisk a person whom he reasonably believes is armed with a dangerous weapon, to have the same probable cause that would be required for an arrest or for a search warrant. If the officer has "probable cause" to believe that a suspect is carrying a concealed weapon, he need not limit his search of the suspect to the frisk allowed under Terry. Under those circumstances, he could immediately arrest and completely search the suspect. It is evident that the Florida stop and frisk law does not require probable cause in the same sense that probable cause is required for a search warrant or for an arrest.[6]
Thus we hold that so long as an anonymous tip upon which a BOLO is based contains sufficient indicia of reliability, then a stop and a frisk based on the tip will be valid. We note, however, that the validity of a stop and frisk can only be decided in the concrete factual context of each individual case.[7]Sibron v. New York.
*826 Applying the standards of reasonableness for a valid stop and frisk to the present case, we hold that the police officers were justified in relying on the BOLO as a basis for their articulated reasonable suspicion that Webb was the robbery suspect about whom they had been alerted to be on the lookout for earlier the same day and as a basis for their reasonable belief that Webb was armed and dangerous. The trial court so found, and its rulings on the motion to suppress are clothed with a presumption of correctness and must be accepted if the record contains evidence to support them. McNamara v. State, 357 So.2d 410 (Fla. 1978). The evidence at the suppression hearing and the inferences derived therefrom interpreted in a manner most favorable to sustain the trial court's findings support the trial court's ruling that the stop and frisk of Webb under the totality of the circumstances was reasonable, and the district court erred in reversing the trial court's order denying the motion to suppress.
The Fourth District believed this case to be controlled by its prior decision in St. John v. State because there was no testimony at the suppression hearing concerning the source of the information contained in the BOLO. This is contrary to our holding in Hetland. It also noted that the officers personally observed nothing suspicious in Webb's conduct at the time of the stop. We held in Hetland that an officer's personal observation of suspicious conduct is not a prerequisite to the officer's having a reasonable suspicion founded in articulable facts.
The apparently anonymous information in the BOLO upon which the officers acted in the present case bore sufficient indicia of reliability. The description of the robbery suspect, which the officers immediately wrote down, was specific, and the information was corroborated when the officers acted promptly and found Webb who matched the description in the same general vicinity where the two robberies had occurred on the two previous days. Based on this information bearing sufficient indicia of reliability to warrant a stop, they were justified in believing that he was armed. Facts were articulated at the suppression hearing upon which the officers founded their suspicion. Under the totality of the circumstances, we hold that the stopping and the frisking of Webb was valid and that the trial court correctly denied the motion to suppress.
To hold otherwise would place in jeopardy the lives of police officers who have made a valid stop and who have reason to believe that the suspect is armed. As Justice Harlan stated in his concurring opinion in Terry v. Ohio, "[t]here is no reason why an officer, rightfully but forcibly confronting a person suspected of a serious crime, should have to ask one question and take the risk that the answer might be a bullet." 392 U.S. at 33, 88 S.Ct. at 1886. Upon the information known to the officers, failure to have stopped Webb would "have been poor police work indeed," Terry v. Ohio, 392 U.S. at 23, 88 S.Ct. at 1881, and failure to frisk could have cost the officers their lives.
Accordingly, the decision of the district court is quashed, and the cause is remanded with directions to reinstate the trial court's order denying the motion to suppress and to affirm the judgment of the trial court.
It is so ordered.
SUNDBERG, C.J., and ADKINS, BOYD and OVERTON, JJ., concur.
ENGLAND, J., concurs with an opinion, with which SUNDBERG, C.J., concurs.
McDONALD, J., dissents.
ENGLAND, Justice, concurring.
Reasonable men could possibly differ as to whether the anonymous tip and surrounding *827 circumstances bore sufficient indicia of reliability to justify Webb's "stop" in this case. The specificity of the information given is important, as are the time and space relationships between the tip and the stop.[1]
Based on testimony at a suppression hearing, the trial judge thought the indicia were reliable and that, I submit, ought to end the matter in this case. The fact that appellate judges think otherwise[2] is irrelevant, for by no stretch of imagination can it be said the trial judge abused his discretion to evaluate the evidence and rule on the reliability of the tip. See McNamara v. State, 357 So.2d 410, 412 (Fla. 1978).
SUNDBERG, C.J., concurs.
NOTES
[1] At the time the district court decided the present case, it did not have the benefit of our decision adopting the decision of the District Court of Appeal, Second district, in State v. Hetland, 366 So.2d 831 (Fla. 2d DCA 1979).
[2] At the suppression hearing, there was no testimony concerning the source of the description of the robbery suspect. We assume, for purposes of disposition of this cause, that the tip was anonymous because the State did not prove otherwise.
[3] The fact that Webb, after his arrest, was not charged with the robberies in no way affects the validity of the stop and frisk that resulted in his arrest for carrying a concealed firearm.
[4] The Supreme Court explained that as a practical matter, the type of police conduct with which it was dealing in Terry  "necessarily swift action predicated upon the on-the-spot observations of the officer on the beat"  could not be subjected to the warrant requirement. Terry v. Ohio, 392 U.S. at 20, 88 S.Ct. at 1879.
[5] See. e.g. State v. Hendry, 309 So.2d 61 (Fla. 2d DCA 1975), and St. John v. State, 363 So.2d 862 (Fla. 4th DCA 1978).
[6] This is confirmed in the following historical note by the legislative reference bureau:

Senate Bill 125, Chapter 69-73, reiterates the circumstances under which a law enforcement officer may reasonably temporarily detain a person suspected of breaking the law, or about to break the law, as enunciated in the case of Terry v. State of Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, and is given the short title "Florida Stop and Frisk Law." While this statute does nothing more than set forth the circumstances under which a reasonable stopping, detaining and searching of a suspect may be carried out by a law enforcement officer, it will serve as a guideline to better inform lawmen how to successfully start a preliminary investigation into a crime that is being committed or is about to be committed. This act is effective October 1, 1969.
Florida Legislative Service Bureau, 1969 Digest of General Legislation (July 1969).
[7] Validating a frisk based on information obtained from an unknown informant, the United States Court of Appeals, First Circuit, in Ballou v. Massachusetts, 403 F.2d 982 (1st Cir.1968), cert. denied, 394 U.S. 909, 89 S.Ct. 1024, 22 L.Ed.2d 222 (1969), acknowledged the problems that could arise with the use of anonymous tips as the basis for justifiable suspicion for a stop and frisk but countered:

[T]o the argument that tips may stem from informants motivated by spite or desire for revenge, we observe that even "reliable" or paid informers may be so motivated and that the critical question is the accuracy of the tip, to be assured both by its specificity and capability of being substantially corroborated by observation. Finally, of course, there is the possibility that an unscrupulous officer could manufacture a tip which would allow him to do what he otherwise could not do. But even in cases of tips from "reliable" informers, there is ordinarily no verification of the police testimony of reliability; there is always the necessity of relying to some extent on the good faith of law enforcement officials. This is true even where an officer testifies, as in Terry, to having observed unusual conduct on the street. In all such cases, of course, the testimony of the police is subject to cross-examination. Each case must, in the final analysis, be decided on its own facts.
403 F.2d at 986.
[1] State v. Hetland, 366 So.2d 831, 839 (Fla.2d DCA 1979), approved, 387 So.2d 963 (Fla. 1980).
[2] The district court thought the time of the stop "remote" from the prior robberies and the place of the stop "distant". Webb v. State, 384 So.2d at 211. Those conclusions are not supported by the record. No evidence was presented as to the range of the apprehending officers' "beat" in metropolitan Ft. Lauderdale. One of the two drugstores previously robbed was said to be about two miles from the place of Webb's stop. A conclusion by appellate judges that the stores were "distant" from the stop simply is not warranted. As regards the time being "remote", the arresting officer testified that the subject of the BOLO had committed one drugstore robbery the day before and one the day before that. The time was clearly not remote.