Mr. Mark H. Scruby County Attorney Clay County Post Office Box 1366 Green Cove Springs, Florida 32043
Dear Mr. Scruby:
You ask substantially the following question:
 May a county enter into a design-build contract with a corporation which would design, obtain permits for, construct and operate a solid waste disposal facility without complying with the provisions of s. 287.055, F.S., the Consultants' Competitive Negotiation Act.
In sum, I am of the following opinion:
 A county may not enter into a design-build contract which would include professional services without following the procedures set forth in s. 287.055, F.S., the Consultants' Competitive Negotiation Act.
You state that the Board of County Commissioners of Clay County wishes to enter into a performance-based contract with a corporation specializing in solid waste disposal to design, obtain permits for, construct and operate a solid waste disposal facility on a county landfill site. Under the contract, engineering and design services would be provided by the corporation.[1] The corporation would be compensated from the operation of the facility, thus reducing the county's initial outlay of funds. There remains the question, however, of whether the use of a performance-based contract for the procurement of professional services would be subject to s. 287.055, F.S.
"Performance-based" contract is not defined in s. 287.055, F.S. Section 255.29(4), F.S., however, contains minimum procedures for entering into "performance-based" contracts. These minimum procedures show that a "performance-based" contract involves a single entity providing the design and construction for a project under one contract.[2] Furthermore, information supplied to this office indicates that such contracts specify performance levels or design criteria which a completed project must meet.[3]
It appears, therefore, that while a contractor has discretion in how a project will be completed to meet the specified performance levels under a performance-based contract, the performance levels set forth in the contract are the standard by which the completed project is judged.[4]
Section 287.055, F.S., the "Consultants' Competitive Negotiation Act" (CCNA), sets forth requirements for procuring and contracting for the services of architects, professional engineers, landscape architects, or registered land surveyors.[5] Under the act, an agency[6] must competitively select and negotiate with the most qualified firm to provide these professional services for a project.[7]
The CCNA exempts from its operation "performance-based" contracts.[8] This exemption was created in s. 10, Ch. 84-321, Laws of Florida, which added subsection (4) to s. 255.29, F.S., requiring the Department of General Services (DGS) to establish procedures for entering into performance-based contracts and providing that "[s]ection 287.055, F.S., shall not be applicable to the procurement of performance based on contracts."[9]
The last sentence in s. 10, Ch. 84-321, Laws of Florida, which made s. 287.055, F.S., inapplicable to performance-based contracts, was moved by the Division of Statutory Revision to s.287.055(10), F.S.[10] The transfer of the provision to s.287.055, F.S., by Statutory Revision, however, does not affect the intent of the Legislature.[11] As The Supreme Court of Florida stated in State v. Bussey,
 [t]he arrangement and classification of laws for purposes of codification in the Florida Statutes is an administrative function of the Joint Legislative Management Committee of the Florida Legislature. s. 11.242, Fla.Stat. (1983). The classification of a law or a part of a law in a particular title or chapter of Florida Statutes is not determinative on the issue of legislative intent, though it may be persuasive in certain circumstances. Where there is a question, established principles of statutory construction must be utilized.[12]
Placement of the "performance-based" contract exemption language of s. 10, Ch. 84-321, Laws of Florida, in Ch. 287, F.S., by Statutory Revision, therefore, does not alter the legislative intent of the exemption. To determine the legislative intent, the act as a whole must be considered; i.e., "the evil to be corrected, the language of the act, including its title, the history of its enactment, and the state of the law already in existence bearing on the subject."[13]
Chapter 84-321, Laws of Florida, provides
 [i]t is, therefore, the intent of the Legislature in enacting this legislation that a comprehensive capital facilities planning and budgeting process be established and maintained to enable the state to better meet the demands for new and properly maintained infrastructure in a fiscally responsible manner.[14]
The title to Ch. 84-321, Laws of Florida, reflects that s. 10 of the act only amends s. 255.29, F.S., and provides for the adoption of procedures for entering into performance-based contracts by DGS. While the title of an act is not a part of the statute, it is a valuable aid in determining legislative intent[15] and provides a direct statement by the Legislature of its intent.[16]
The provisions in s. 10, Ch. 84-321, Laws of Florida, must be read as one enactment, indicating a scheme whereby DGS can establish procedures to enter into performance-based contracts, when in the state's best interest, without following the procedures set forth in the CCNA and without compromising the underlying purpose or protections therein. I cannot read the provisions in s. 10, Ch. 84-321, Laws of Florida, as distinct enactments with fields of separate operation.[17] To do so would render superfluous the requirements of the CCNA simply by an agency's choosing to procure professional services through a performance-based contract.[18]
I have not found, nor have you brought to my attention, anything which indicates the Legislature intended to exempt all performance-based contracts from the provisions of the CCNA by the enactment of Ch. 84-321, Laws of Florida. In the absence of such evidence and in light of the purpose as indicated by the language and objective contained in the enactment, it is my opinion that counties must comply with the provisions of the CCNA for the procurement of professional services through a performance-based contract.
Sincerely,
Robert A. Butterworth Attorney General
(ls)
[1] Section 403.707, F.S., provides that "[n]o resource recovery and management facility or site may be operated, maintained, constructed, expanded, modified, or closed without an appropriate and currently valid permit issued by the [D]epartment [of Environmental Regulation]." Rule 17-7.030(2), F.A.C., requires the person making an application for a resource recovery and management facility permit to submit six copies of the application, engineering plans, and all supporting data and reports for the proposed construction, operation and closure of the facility prepared by a Professional Engineer registered in the State of Florida pursuant to Ch. 471, F.S.
[2] Cf., s. 255.29(4), F.S., providing the minimum procedures required for entering into performance-based contracts as follows:
 (a) Prequalification of bidders; (b) Criteria to be used in developing requests for proposals which may provide for singular responsibility for design and construction, developer flexibility in material selection, construction techniques, and application of state-of-the-art improvements; (c) Accelerated scheduling, including the development of plans, designs, and construction simultaneously, and (d) Evaluation of proposals and award of contracts considering such factors as price, quality, and concept of the proposal. (e.s.)
[3] Cf., Rule 13D-23.004, F.A.C., requiring that a design criteria package be prepared by a design criteria professional before a design-building contract may be bid or negotiated by the Department of General Services. Rule 13D-23.002(6), F.A.C., defines "Design Criteria Package" as a clear, concise, performance oriented outline specification of the requirements of the project which defines the design constraints and the time and budgetary constraints to be achieved. This may include graphics indicating the site plan, survey dimensions, contours, access roads, setbacks and preferred massing of the building elements.
[4] Id.
[5] Section 287.055(2)(a), F.S., defines "Professional services" to mean "those services within the scope of the practice of architecture, professional engineering, landscape architecture, or registered land surveying, as defined by the laws of the state, or those performed by any architect, professional engineer, landscape architect, or registered land surveyor in connection with his professional employment or practice."
[6] Section 287.055(2)(b), F.S., defines "Agency" to mean "the state or a state agency, municipality, or political subdivision, a school district or a school board."
[7] Section 287.055(4) and (5), F.S.
[8] See, s. 287.055(10), F.S., providing that "[t]his section is not applicable to the procurement of performance based on contracts."
[9] See, s. 10, Ch. 84-321, Laws of Florida, adding subsection (4) to s. 255.29, F.S., requiring the adoption of procedures for entering into performance-based contracts and stating that "[s]ection 287.055 shall not be applicable to the procurement of performance based on contracts."
[10] See, s. 11.242, F.S., providing the powers, duties and functions of the Joint Legislative Management Committee as to statutory revision.
[11] See, Williams v. Jones, 326 So.2d 425, 435 (Fla. 1975) (placement by the Statutory Revision and Indexing Division of a taxing statute in the chapter on exemptions cannot affect the intent of the Legislature expressed in the session laws chapter in which the statute was enacted).
[12] State v. Bussey, 463 So.2d 1141, 1143 (Fla. 1985).
[13] State v. Webb, 398 So.2d 820, 824 (Fla. 1981), citing Foley v. State, 50 So.2d 179, 184 (Fla. 1951).
[14] Section 2, Ch. 84-321, Laws of Florida.
[15] Speights v. State, 414 So.2d 574, 578 (1 D.C.A.Fla., 1982).
[16] State v. Webb, 398 So.2d 820, 825 (Fla. 1981).
[17] See, Ivester v. State, 398 So.2d 926, 930 (1 D.C.A.Fla., 1981) (when two provisions have their origin in the same enactment, they are required to be read together and harmonized).
[18] See, Wakulla County v. Davis, 395 So.2d 540, 543 (Fla. 1981) (courts are to avoid an interpretation of a statute that produces an absurd or unreasonable result).