GRIFFIN, Judge,
dissenting.
Subsection 5 of section 901.151, Florida Statutes (1989) provides:
(5) Whenever any law enforcement officer authorized to detain temporarily any person under the provisions of subsection (2) has probable cause to believe that any person whom he has temporarily detained, or is about to detain temporarily, is armed with a dangerous weapon and therefore offers a threat to the safety of the officer or any other person, he may search such person so temporarily detained only to the extent necessary to disclose, and for the purpose of disclosing, the presence of such weapon.... (emphasis added).
Florida courts have consistently adhered to the “probable cause” requirement of this statute. The officer must have a reasonable belief that the citizen he has detained is, in fact, armed with a dangerous weapon and therefore offers a threat to the safety of the officer. State v. Webb, 398 So.2d 820, 825 (Fla.1981); Turner v. State, 578 So.2d 1147 (Fla. 2d DCA 1991). General “safety concerns” of an officer involved in an investigative stop will not justify the frisk of a citizen even where the suspected crime is associated with weapons. Johnson v. State, 537 So.2d 117 (Fla. 1st DCA 1988). A protective frisk that is based on a routine safety practice, instead of a factual predicate establishing probable cause, fails to meet the requirements of section 901.-151, Florida Statutes, and is constitutionally impermissible. Harris v. State, 574 So.2d 243 (Fla. 1st DCA 1991); Redfin v. State, 453 So.2d 425 (Fla. 5th DCA 1984). Because Officer David Semones of the City of Sanford Police Department has stumbled on a solution to the probable cause requirement, I herewith reproduce his testimony:
Q. Okay. Was the setting that was presented before you as you approached the vehicle consistent with the occasions that you have investigated or consistent with burglaries of automobiles, thefts of automobiles in your experience?
A. The location was right, the way it was positioned, I thought at least warrant to look into it to see what was going on in the vehicle anyway, yes, sir.
Q. Okay. What did you do after you had [T.P.] get out of the car?
A. Had him place his hands on the— come to the front of the vehicle, place his hands on the hood and patted him down. Q. And what did you discover when you patted him down? Well, what were you patting him down for?
A. A weapon.
Q. Okay. Do you have — Have you had any special training in law enforcement to look for weapons or—
A. It’s not necessarily any special training. We receive memos, police bulletins, et ceteral[1] [sic]. The State Attorney occasionally sends us legal bulletins deal *1023 ing with concealed weapons, the legal bulletins from police departments on weapons that are being discovered, how they’re being made concealed.
Q. And the purpose of these memos is to assist you in keeping safe?
A. And to alert us to — how weapons are being made for people to use.
Q. Okay. What was it that you discovered on [T.P.]?
A. In his right front pocket was a medicine bottle I guess approximately an inch in diameter by two or three inches in length.
Q. Did you have [T.P.] remove it from his pocket?
A. No, sir. I reached in and removed it. Q. Okay, why was it that that meant— the shape that you felt in his pocket made you think that it could have been a weapon? Well, first of all did you think it was a weapon?
A. I wasn’t sure, but wanted to remove it for my own safety to make sure that it was or was not.
Q. Okay. Why is it that something of that size and shape was suspect to you as being a weapon?
A. Some of the bulletins we’ve received lately there’s even things as small as fountain pens that have been made into weapons, either .22 caliber or knives. The latest one we’ve seen is a pager—
# 5|C * >fC % Jjt
Q. What was it you were saying about a pager?
A. The most recent one is the pagers that are being worn quite often. One of those has even been found where it had been converted into a .22 caliber and capable of firing one round.
Q. Okay. Did you believe that this object that you were removing from [T.P.’s] pocket could have been such a weapon?
A. I wanted to make sure for my own safety that it was or was not as I had said.
Q. Okay. What was it you found that object to be.
A. The medicine bottle, and it contained a piece of suspected crack cocaine.
On cross-examination, Semones acknowledged that he had earlier testified in his deposition he had no particular reason to believe that the defendant had a weapon and that he just did the pat-down as a safety precaution “to make sure that there is no weapon or anything to harm myself or other officers involved.”[2]
Officer Jankowski testified that while Officer Semones was patting down the right side of this detainee’s body, he was patting on the left side. He expressed the problem this way:
Q. Why would this pill bottle during a pat-down be of a concern to a police officer in light of those memorandums that you — those memorandums that you’ve received?
A. Well, any item that’s hard would be of concern. We’ve received memos on something as simple as a pen that would contain a bullet and fire, or the beepers that a lot of kids are carrying can be made into a type of handgun type weapons. Anything hard in their pockets is a potential threat.
In White v. State, 458 So.2d 1150 (Fla. 1st DCA 1984), rev. denied, 464 So.2d 556 (Fla.1985), a police officer performing a pat-down search found an envelope that he testified he thought might have contained a knife or a gun, powder that could be thrown in his eyes or plastic explosives. In fact, the envelope contained marijuana. The White court reversed the denial of suppression of the contraband. The court found the officer’s testimony that he thought the object in appellant’s pocket was a weapon was “farfetched”, and his *1024 plastic explosives theory was deemed “incredible”. The court pointed out that if the officer’s testimony were to be credited, “nearly anything found in a pat-down will become admissible.”
In Warren v. State, 547 So.2d 324 (Fla. 5th DCA 1989), this court reversed the denial of a suppression order holding that the police officer exceeded the permissible scope of a pat-down search when he searched a detainee’s shirt pockets and discovered two loose pieces of crack cocaine. We noted that the officer never asserted that he believed the defendant was carrying a weapon, and it would have been unreasonable to believe the small (hard) objects in his pockets were weapons.
In a recent decision of the Second District Court of Appeal, Smalls v. State, 581 So.2d 1003 (Fla. 2d DCA 1991), the officer testified that in doing a pat-down of the defendant “looking toward officer safety”, he noticed a matchbox in defendant’s front pants pocket, which the officer rattled, then removed and opened to find three rocks of crack cocaine. The court held that because the officer did not testify he suspected the defendant was armed and the search was not based on probable cause, the cocaine in the matchbox had to be su-pressed.
The novel feature of this case is the internal memoranda describing new, unconventional weapons and, evidently, implying that any object, even a pill bottle, can be a dangerous weapon. Even if the “bulge” in T.P.’s shirt pocket created by the pill bottle were enough to warrant the pat down, inspection of the pill bottle exceeded the scope permissible under section 901.151, Florida Statutes. In the context of searches of citizens detained for investigation, if every fear becomes “reasonable” because anything is possible, “probable cause” becomes a threshold without any floor.

. Note to practitioners: these documents do not have to be in evidence.

. He explained the apparent discrepancy as follows:
I thought I answered them both the same way, basically the same here and on the deposition. That I had no real particular reason he had a weapon. There was no information that he was carrying a weapon. It’s just anytime that time of — Well, actually anytime of day if I’m investigating something that might be possibly involved in a crime, that I will have [sic] the individual down just to make sure that there is no weapon or anything to harm myself or other officers involved.