Dear Ms. Akin:
On behalf of the Clearwater City Council, you ask substantially the following question:
Does section 212.055(2), Florida Statutes, allow the City of Clearwater to use infrastructure surtax proceeds to fund the infrastructure improvements and repairs of a facility owned and operated by the Clearwater Marine Aquarium, Inc., a private non-profit corporation if the City holds a reverter interest in the land on which the facility is located?
According to your letter, the Clearwater Marine Aquarium, Inc. (CMA), is a private non-profit corporation dedicated to public education and research, and the rescue, rehabilitation and release of sick or injured animals.[1] You state that the facility is located on land owned by the CMA. Title to the land was conveyed by the city to the CMA in 1986. The deed to the property contains a reverter clause stating that if the land is used for any purpose other than a marine science center, it will revert back to the city.
Article VII, section 9(a) of the Florida Constitution provides that "[c]ounties, school districts, and municipalities shall . . . be authorized by law to levy ad valorem taxes and may be authorized bygeneral law to levy other taxes, for their respective purposes, except ad valorem taxes on intangible personal property and taxes prohibited by this constitution." (e.s.) Thus, the exercise of the power of taxation results from a constitutional authorization to municipalities pursuant to Article VII, Florida Constitution, implemented by statute, rather than the exercise of home rule powers pursuant to section 166.021, Florida Statutes.[2]
Section 212.055(2), Florida Statutes, is a general law that authorizes counties to levy an infrastructure tax under precisely defined conditions. These conditions prescribe the rates of taxes, the uses for the revenue raised by the taxes, and the procedure to be followed for approving the taxes. Pursuant to section 212.055(2)(c), Florida Statutes, the proceeds of the surtax are distributed to the county and the municipalities within such county in which the surtax was collected, according to an interlocal agreement between the county and the municipalities or, if there is no interlocal agreement, according to the formula provided in section 218.62, Florida Statutes. The funds raised by the local government infrastructure surtax and any interest earned thereon must be expended
"to finance, plan, and construct infrastructure and to acquire land for public recreation or conservation or protection of natural resources[.]"[3]
The statute prohibits the use of the proceeds and any interest earned thereon "for operational expenses of any infrastructure[.]"[4] The term "infrastructure" is defined to mean:
"a. Any fixed capital expenditure or fixed capital outlay associated with the construction, reconstruction, or improvement of publicfacilities that have a life expectancy of 5 or more years and any land acquisition, land improvement, design, and engineering costs related thereto.
* * *
d. Any fixed capital expenditure or fixed capital outlay associated with the improvement of private facilities that have a life expectancy of 5 or more years and that the owner agrees to make available for use on a temporary basis as needed by a local government as a public emergency shelter or a staging area for emergency response equipment during an emergency officially declared by the state or by the local government under s. 252.38. Such improvements under this sub-subparagraph are limited to those necessary to comply with current standards for public emergency evacuation shelters. The owner shall enter into a written contract with the local government providing the improvement funding to make such private facility available to the public for purposes of emergency shelter at no cost to the local government for a minimum period of 10 years after completion of the improvement, with the provision that such obligation will transfer to any subsequent owner until the end of the minimum period."[5] (e.s.)
This office has been advised that the referendum approving the extension of the discretionary surtax in 1997 provided that the proceeds would be used for "transportation, parks and open space, endangered lands, surface water management, public safety and publicfacilities and other projects authorized by Section 212.055, Florida Statutes."[6] (e.s.)
An examination of the legislative history surrounding the enactment of section 212.055(2), Florida Statutes, indicates that the statute was enacted to provide a means of meeting the tremendous strains placed upon the infrastructure of local governments by the influx of people moving into this state.[7] Thus, the statute, in authorizing a county to impose an infrastructure surtax, would appear to require that the surtax proceeds be used to meet the county's or municipality's infrastructure needs.[8]
In Attorney General Opinion 99-24, this office was asked whether office space that was the subject of a long-term lease for use as a branch office for the Clay County Clerk of Court would fall within the scope of the term "public facilities" as used in section212.055(2)(d)2.a., Florida Statutes. This office concluded that property not owned by the county would not qualify and thus, local government infrastructure surtax funds could not be expended for the improvement and renovation of such property.[9] Similarly, in Attorney General Opinion 02-55, this office stated that it did not appear that school capital outlay tax moneys collected to fund district school projects would be an appropriate resource for funding projects on property not owned or controlled by the district.[10]
In 2006, the Legislature amended section 212.055(2), Florida Statutes, to specifically authorize fixed capital expenditures or fixed capital outlay associated with the improvement of private facilities that have a life expectancy of 5 or more years.[11] Such authorization, however, is limited to those private facilities which the owner agrees to make available for use on a temporary basis as needed by a local government as a public emergency shelter or a staging area for emergency response equipment during an officially declared emergency.
It is a general principle of statutory construction that the mention or enumeration of one thing in a statute implies the exclusion of another and that a legislative direction as to how a thing shall be done is, in effect, a prohibition against its being done in any other way.[12] The authorization by the Legislature to use surtax proceeds for capital expenditures or fixed capital outlay associated with certain specified private facilities implies that such funds may not be used for other private property. As discussed above, it was the intent of the Legislature in authorizing the imposition of the infrastructure surtax to provide a means of meeting the tremendous strains placed upon the infrastructure of local governments. The use of such funds for facilities owned by private entities would not appear to be in accordance with such intent unless the Legislature has otherwise, as in section 212.055(2)(d)2.d., Florida Statutes, specifically authorized such use. The city possesses no home rule powers regarding taxation, but must act in accordance with the terms of the statute. While the CMA provides a valuable service to the public, neither the facility nor the property on which the facility is located is owned by the city. The fact that the deed granting CMA title to the property contains a reverter clause does not alter the character of the property as private property.[13]
Accordingly, I am of the opinion that section 212.055(2), Florida Statutes, does not allow the City of Clearwater to use infrastructure surtax proceeds to fund the infrastructure improvements and repairs of a facility owned and operated by Clearwater Marine Aquarium, Inc., a private non-profit corporation.
Sincerely,
 Bill McCollum Attorney General
BM/tjw
[1] Originally incorporated as the Clearwater Marine Science Center in 1972, CMA changed its name in 1996.
[2] And see Art. VII, s. 1(a), Fla. Const., stating:
"No tax shall be levied except in pursuance of law. No state ad valorem taxes shall be levied upon real estate or tangible personal property. All other forms of taxation shall be preempted to the stateexcept as provided by general law." (e.s.)
See also Op. Att'y Gen. Fla. 01-45 (2001) (municipality has no home rule powers with respect to the levy of taxes, but must be able to point to constitutional or statutory authority in exercising its taxing power).
[3] Section 212.055(2)(d)1., Fla. Stat. Such funds may also be used "to finance the closure of county-owned or municipally owned solid waste landfills that are already closed or are required to be closed by order of the Department of Environmental Protection."
[4] Id.
[5] Section 212.055(2)(d)2., Fla. Stat. Also included within the definition of "infrastructure" are fire department vehicles, emergency medical service vehicles, sheriff's office vehicles, police department vehicles, or other vehicles, and equipment necessary to outfit such vehicle or having a life expectancy of at least 5 years, as well as expenditures for the construction, lease, or maintenance of, or provision of utilities or security for, facilities as defined in s.29.008, Fla. Stat.
[6] See Pinellas County Ordinance 97-11. Cf. Ops. Att'y Gen. Fla. 01-45 (2001) (town's governing body is under a legal obligation to ensure that these funds are spent for a purpose authorized by the statute and encompassed by the referendum ballot language voted upon to levy the surtax) and 00-06 (2000) (statute requires that general description of projects to be funded by local government infrastructure surtax be placed on ballot to approve imposition of surtax and revenues from surtax must be expended on projects that fall within the general description contained on the ballot).
[7] See House of Representatives Committee on Community Affairs Staff Analysis CS/CS/HB 1421 (codified as s. 212.055), dated June 8, 1987.
[8] See generally Ervin v. Peninsular Telephone Company, 53 So. 2d 647
(Fla. 1951) (court has duty in construction of statutes to ascertain Legislature's intention and effectuate it); State v. Webb,398 So. 2d 820 (Fla. 1981) (legislative intent is the polestar by which the courts must be guided); Op. Att'y Gen. Fla. 94-37 (1994) (paramount rule of statutory construction is to ascertain and given effect to the intent of the Legislature).
[9] Recognizing that s. 212.055(2), Fla. Stat., did not contain a definition of "public facilities," this office in the opinion reviewed other statutes where the term is used and defined. See, e.g., ss.163.3164(24), 163.3180(1), 163.3221(13), and 189.403(7), Fla. Stat.
[10] Cf. Op. Att'y Gen. Fla. 01-45 (2001) (municipality authorized to use its share of the proceeds of the local government infrastructure surtax to acquire and/or renovate a building to lease to a third party health care provider for use as an indigent health care facility).
[11] See s. 1, Ch. 06-66, Laws of Florida, adding s.212.055(2)(d)2.d.
[12] See, e.g., Thayer v. State, 335 So. 2d 815 (Fla. 1976); Alsop v.Pierce, 19 So. 2d 799, 805-806 (Fla. 1944).
[13] See 28 Am. Jur. 2d Estates s. 31 ("In any instance in which a determinable fee is created, while the fee is outstanding in the grantee or her successors, and before the happening of the event which is the qualification terminating the outstanding defeasible interest, the creator or her successors in interest have no estate in the property, but only a possibility of reverter."). Cf. Richardson v. Holman, 33 So. 2d 641 (1948) (a possibility of reverter is an uncertain interest in land).