Dear Ms. Rogers:
On behalf of the Escambia County Board of County Commissioners, you ask the following question:
May the county use infrastructure surtax proceeds to contribute to the construction of the Naval Flight Academy to be located on the Pensacola Naval Air Station, a project commenced by the Naval Aviation Museum Foundation and upon completion conveyed to the United States Navy?
In sum:
The county may not use infrastructure surtax proceeds to contribute to the construction of the Naval Flight Academy where the facility will not be owned by the county, nor will it be available for use by the county as a public emergency shelter or a staging area for emergency response equipment during an emergency officially declared by the state or by the county.
You state that the Naval Aviation Museum Foundation (foundation), a non-profit corporation, has approached the county commission as a source for funds for the construction of the Naval Flight Academy (academy). The proposed academy will be a training camp for youth interested in flying. It is fashioned after the NASA Space Camp in Huntsville, Alabama. Children of various ages would come to the facility and stay for a period of time. It is anticipated that many of the children would be accompanied by their parents who would stay in lodging establishments in the area.
The county is investigating the use of local option sales tax proceeds to fund the county's participation in the project. The funds would be used for capital improvements with a life expectancy of at least five years. Such improvements would be constructed by the foundation, but upon completion would be conveyed to the United States Navy. The academy would be located at the Pensacola Naval Air Station, a United States military installation located within the boundaries of Escambia County.
Section 212.055, Florida Statutes, authorizes the imposition of a discretionary sales surtax. Local governments, pursuant to ordinance approved by a majority of electors of the county voting in a referendum, may levy a discretionary sales surtax of 0.5 or 1 percent.[1] The proceeds of the surtax may be used
"to finance, plan, and construct infrastructure and to acquire land for public recreation or conservation or protection of natural resources and to finance the closure of county-owned or municipally owned solid waste landfills that are already closed or are required to close by order of the Department of Environmental Protection . . . Neither the proceeds nor any interest accrued thereto shall be used for operational expenses of any infrastructure, except that any county with a population of less than 75,000 that is required to close a landfill by order of the Department of Environmental Protection may use the proceeds or any interest accrued thereto for long-term maintenance costs associated with landfill closure."[2]
The statute, in pertinent part, defines "infrastructure" as
"a. Any fixed capital expenditure or fixed capital outlay associated with the construction, reconstruction, or improvement of public facilities that have a life expectancy of 5 or more years and any land acquisition, land improvement, design, and engineering costs related thereto.
* * *
d. Any fixed capital expenditure or fixed capital outlay associated with the improvement of private facilities that have a life expectancy of 5 or more years and that the owner agrees to make available for use on a temporary basis as needed by a local government as a public emergency shelter or a staging area for emergency response equipment during an emergency officially declared by the state or by the local government under s. 252.38. Such improvements under this sub-subparagraph are limited to those necessary to comply with current standards for public emergency evacuation shelters. The owner shall enter into a written contract with the local government providing the improvement funding to make such private facility available to the public for purposes of emergency shelter at no cost to the local government for a minimum period of 10 years after completion of the improvement, with the provision that such obligation will transfer to any subsequent owner until the end of the minimum period."[3]
An examination of the legislative history surrounding the enactment of section 212.055(2), Florida Statutes, indicates that the statute was enacted to provide a means of meeting the tremendous strains placed upon the infrastructure of local governments by the influx of people moving into this state.[4] Thus, the statute, in authorizing a county to impose an infrastructure surtax, would appear to require that the surtax proceeds be used to meet the county's or municipality's infrastructure needs.[5]
In Attorney General Opinion 99-24, this office was asked whether infrastructure surtax funds could be used to renovate office space that was the subject of a long-term lease for use as a branch office for the Clay County Clerk of Court. The opinion considered whether such facilities would fall within the scope of the term "public facilities" as used in section 212.055(2)(d)2.a., Florida Statutes. This office concluded that property which is not owned by the county does not qualify as "public facilities" and, thus, local government infrastructure surtax funds could not be expended for the improvement and renovation of such property.[6]
Similarly, in Attorney General Opinion 02-55, this office stated that it did not appear that school capital outlay tax moneys collected to fund district school projects would be an appropriate resource for funding projects on property not owned or controlled by the district.[7]
More recently, this office was asked whether a city could use infrastructure surtax proceeds for improvements and repairs of a facility owned and operated by the Clearwater Marine Aquarium, Inc., a private non-profit corporation, if the city held a reversionary interest in the land on which the facility was located. While recognizing that the aquarium provided a valuable service to the public, the opinion found that because neither the facility nor the property on which the facility was located was owned by the city, infrastructure surtax proceeds could not be used for such property. The fact that the deed granting the aquarium title to the property contained a reverter clause did not alter the character of the property as private property.[8]
As noted above, section 212.055(2), Florida Statutes, specifically authorizes fixed capital expenditures or fixed capital outlay associated with the improvement of private facilities that have a life expectancy of 5 or more years.[9] Such authorization, however, is limited to those private facilities which the owner agrees to make available for use on a temporary basis as needed by a local government as a public emergency shelter or a staging area for emergency response equipment during an officially declared emergency.
It is a general principle of statutory construction that the mention or enumeration of one thing in a statute implies the exclusion of another and that a legislative direction as to how a thing shall be done is, in effect, a prohibition against its being done in any other way.[10] The authorization by the Legislature to use surtax proceeds for capital expenditures or fixed capital outlay associated with certain specified private facilities implies that such funds may not be used for other private property. As discussed above, it was the intent of the Legislature in authorizing the imposition of the infrastructure surtax to provide a means of meeting the tremendous strains placed upon the infrastructure of local governments. The use of such funds for facilities owned by private entities would not appear to be in accordance with such intent unless the Legislature has otherwise specifically authorized such use, as in section212.055(2)(d)2.d., Florida Statutes. The county possesses no home rule powers regarding taxation, but must act in accordance with the terms of the statute.[11]
While the academy may provide a valuable service to the public and incidentally increase patronage of area lodging establishments and restaurants, neither the facility nor the property on which the facility will be located is owned by the county. Moreover, you have not indicated that the proposed agreement between the county and the foundation allows usage of the academy facilities for emergency shelter purposes contemplated by section 212.055(2)(d)2.d., Florida Statutes.
Accordingly, it is my opinion that the county may not use infrastructure surtax proceeds levied pursuant to section 212.055, Florida Statutes, to contribute to the construction of the Naval Flight Academy where the facility will not be owned by the county, nor will it be available for use by the county as a public emergency shelter or a staging area for emergency response equipment during an emergency officially declared by the state or by the county.
Sincerely,
 Bill McCollum Attorney General
BM/tals
[1] Section 212.055(2)(a)1., Fla. Stat.
[2] Section 212.055(2)(d)1., Fla. Stat.
[3] Section 212.055(2)(d)2., Fla. Stat.
[4] See House of Representatives Committee on Community Affairs Staff Analysis CS/CS/HB 1421 (codified as s. 212.055), dated June 8, 1987.
[5] See generally Ervin v. Peninsular Telephone Company, 53 So. 2d 647
(Fla. 1951) (court has duty in construction of statutes to ascertain Legislature's intention and effectuate it); State v. Webb, 398 So. 2d 820
(Fla. 1981) (legislative intent is the polestar by which the courts must be guided); Op. Att'y Gen. Fla. 94-37 (1994) (paramount rule of statutory construction is to ascertain and given effect to the intent of the Legislature).
[6] Recognizing that s. 212.055(2), Fla. Stat., did not contain a definition of "public facilities," this office in the opinion reviewed other statutes where the term is used and defined. See, e.g., ss.163.3164(24), 163.3180(1), 163.3221(13), and 189.403(7), Fla. Stat.
[7] Cf. Op. Att'y Gen. Fla. 01-45 (2001) (municipality authorized to use its share of the proceeds of the local government infrastructure surtax to acquire and/or renovate a building to lease to a third party health care provider for use as an indigent health care facility).
[8] See Op. Att'y Gen. Fla. 07-51 (2007).
[9] See s. 1, Ch. 06-66, Laws of Fla., adding s. 212.055(2)(d)2.d., Fla. Stat.
[10] See, e.g., Thayer v. State, 335 So. 2d 815 (Fla. 1976); Alsop v.Pierce, 19 So. 2d 799, 805-806 (Fla. 1944).
[11] See Ops. Att'y Gen. Fla. 99-72 (1999) (neither cities nor municipalities have home rule powers with respect to the levy of taxes and exemptions therefrom, but must point to constitutional or statutory authority in exercising taxing power); 90-23 (1990) (city may not provide for the rebate of ad valorem taxes collected on newly annexed property, in the absence of constitutional or statutory authority allowing such action); 87-45 (1987); and 84-65 (1984) (units of local government have no inherent power to impose taxes; the taxing power must be derived from the state).