531 So.2d 1028 (1988)
Christopher Todd BAGGETT, Appellant,
v.
STATE of Florida, Appellee.
No. 88-527.
District Court of Appeal of Florida, First District.
October 4, 1988.
Michael E. Allen, Public Defender, and Maria Ines Suber, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., and Helen P. Nelson, Asst. Atty. Gen., Tallahassee, for appellee.
*1029 ZEHMER, Judge.
Christopher Baggett appeals his conviction for carrying a concealed firearm in violation of section 790.01, Florida Statutes. Baggett contends the trial court erred in denying his motion to suppress the weapon seized as a result of his illegal stop and subsequent search. For the reasons stated below, we reverse.
Two hearings were held on the motion to suppress. Deputy Sheriff Fred Nye testified that on the night of October 12, 1987, he was patrolling an area that has numerous pawn shops, a couple of used car lots, and Escambia Motors, which had been the subject of two break-ins within the last month. Nye stated that around 1:45 a.m. he observed the defendant walking in the area, wearing dark clothing. Nye stopped Baggett and asked him where he was going and what he was doing in the area; Baggett responded that he was going home. Nye noticed Baggett putting his hand in his jacket and asked him if anything was wrong. When Baggett responded that he had a stomach ache, Nye requested that he step in front of the patrol car's headlights. Nye got out of the patrol car and noticed that Baggett was acting nervous and fidgety and again placed his hand back into his jacket. Concerned for his safety, Nye patted Baggett down and discovered a loaded firearm. Baggett was then arrested for carrying a concealed firearm.
On cross-examination, Nye stated that at the time he stopped the defendant he had no reason to believe that Baggett had committed or was about to commit a crime; rather, he stopped Baggett because he was a suspicious person. When asked what made Baggett a suspicious person, Nye stated, "Dark clothing, that hour of the night. He didn't look very old. He could have been a runaway. We always get BOLOs for what we call signal 8, runaways. I'll stop and ask" (R. 12). When questioned by the court as to the reasons for stopping Baggett, Nye stated "he looked younger than 18 years old. He looked like a juvenile and we had numerous runaway juveniles so any young people we stop and normally check them out" (R. 18). Nye testified that he would have stopped Baggett even if he looked much older because of the time of day, the dark clothing, and the particular area he was in.
The trial court denied the motion to suppress on the stated grounds that:
Here is a man walking down the street at quarter to 2:00 in the morning with, No. 1, dark clothing on; secondly, he's entitled to wear dark clothing, but he's also in a high crime rate area. And secondly, he looks like he may be young enough to be a runaway delinquent, so for that reason I'm going to deny the motion to suppress.
(R. 21).
At the second hearing, the 19-year-old appellant testified that on the night in question he was going home after visiting a friend. Baggett stated that he had his hand in his jacket because he was looking for cigarettes. When Deputy Nye got out of the car and asked him what he had in his jacket, Baggett handed Nye the gun because he didn't want any trouble. Baggett stated that Nye never asked him to step in front of the car, did not frisk him, and never asked him what he was doing.
The trial court again denied the motion to suppress, stating:
[The defendant] looks several years younger than 19 and I think the sheriff would have been justified in stopping to check the identity of this person and his status, whether he's a runaway or whatever the situation might be. So for that reason I'm going to deny the renewed motion to suppress.
(R. 34-35). Baggett pled nolo contendere to the charge, reserving his right to appeal the denial of the motion to suppress. Adjudication of guilt was withheld and appellant was placed on two years' probation, with the condition that he forfeit the gun and pay court costs of $235.50.
The issue in this case turns on whether the stop and search of appellant was justified and permissible under the "stop and frisk" law, § 901.151, Fla. Stat. (1987). To justify such a stop and detention, a law enforcement officer must have a "founded *1030 suspicion" based upon factual observations in light of his knowledge and experience that the person has committed, is committing, or is about to commit a crime. § 901.151; Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The officer's assessment of the totality of the circumstances "must raise a suspicion that the particular individual being stopped is engaged in wrongdoing." Tamer v. State, 484 So.2d 583, 585 (Fla. 1986). A "mere suspicion" or "hunch" is not enough. Coladonato v. State, 348 So.2d 326 (Fla. 1977).
In this case, Officer Nye testified at the suppression hearing that Baggett was stopped because he was a suspicious person, but that there was no reason to believe that Baggett had committed or was about to commit a crime. Although Nye testified that he also stopped Baggett because he looked very young and could have been a runaway, Nye stated that he would have stopped Baggett even if he looked much older because of the time of day, the dark clothing, and the particular area he was in (R. 18). The record contains no evidence of objective facts that indicate Baggett was a runaway. Therefore, the stop and frisk cannot be justified on the basis of Baggett's youthful appearance.
The remaining reasons given by Nye were not legally sufficient to justify the stop and subsequent frisking of Baggett. Mere presence in a high crime area will not raise a founded suspicion of criminal activity justifying a temporary detention. G.J.P. v. State, 469 So.2d 826 (Fla. 2d DCA 1985). See also State v. Hoover, 520 So.2d 696 (Fla. 4th DCA 1988) (fact that officer observed white male in vehicle in predominantly black, heavy drug sales area, that black male was leaning up against the driver's door, and that black male left quickly when officer drove past, was insufficient to give rise to founded suspicion justifying stop of vehicle); Morris v. State, 519 So.2d 706 (Fla. 2d DCA 1988) (presence in high crime area was not in itself sufficient to give rise to founded suspicion justifying temporary detention of defendant); Mosley v. State, 519 So.2d 58 (Fla. 2d DCA 1988) (fact that defendant was walking in high crime area, companion allegedly was drug dealer, and defendant's fists were clenched in nonthreatening manner, was insufficient to raise founded suspicion of criminal activity justifying temporary stop). Furthermore, the fact that appellant placed his hand in his jacket after seeing Officer Nye did not give rise to a founded suspicion. See Jenkins v. State, 524 So.2d 1108 (Fla. 3d DCA 1988) (fact that defendant, who was walking along public street at night in high crime commercial area, was observed placing his left hand behind his back as if to put something down his pants, was insufficient to support stop and pat-down search); R.B. v. State, 429 So.2d 815 (Fla. 2d DCA 1983) (fact that defendant quickly placed his hand in pocket after seeing police car did not give rise to founded suspicion).
As a result of the illegal detention, the seizure of the revolver found during the subsequent pat-down of appellant was invalid and the evidence should have been suppressed. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).
REVERSED.
ERVIN and WENTWORTH, JJ., concur.