696 So.2d 860 (1997)
Adonia Hillary KING, Appellant,
v.
STATE of Florida, Appellee.
No. 95-03846.
District Court of Appeal of Florida, Second District.
May 9, 1997.
Rehearing Denied July 14, 1997.
*861 James Marion Moorman, Public Defender, and Cynthia J. Dodge, Assistant Public Defender, Bartow, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Johnny Salgado, Assistant Attorney General, Tampa, for Appellee.
CAMPBELL, Acting Chief Judge.
Appellant challenges the denial of his motion to suppress cocaine and a cocaine pipe. Our review of the record leads us to conclude that the court was correct in denying the motion to suppress. Accordingly, we affirm.
Officers Kemper and Cason were traveling South on Iowa Avenue in Lakeland at 7:30 p.m. when they noticed appellant standing in the middle of the road, looking in the direction of another man who was walking away from appellant. Appellant appeared disoriented. Despite the approach of the patrol car, appellant did not move from the street, so Officer Kemper stopped his car to investigate. Officer Kemper approached appellant while Officer Cason approached the other individual. As Officer Kemper approached appellant, appellant still did not notice the officer. Officer Kemper called out something to the effect of, "What's wrong?" Appellant still did not respond. Finally, when the officer got closer and asked what was wrong, appellant turned to look at him. Officer Kemper again asked what was wrong, thinking that appellant had been the victim of an offense, and appellant began backing away, putting his hands in his front pockets. Concerned for his own safety, Officer Kemper told appellant not to put his hands in his pockets. Appellant took his hands out of his pockets, but when the officer approached him again to talk to him, he put his hands behind his back. The officer, again concerned for his own safety and believing that appellant was reaching for a weapon "or something," grabbed appellant by the arm and placed him up against the patrol car. As he did so, he observed the crack pipe protruding from the rear waistband of appellant's pants. From his past experience, the officer immediately knew what the object was, and arrested appellant.
Appellant was subsequently charged by information with possession of cocaine and drug paraphernalia. When the court denied his motion to suppress, the state stipulated that the motion was dispositive. The court sentenced appellant to one year in county jail, to be followed by three years probation for possession of cocaine and one year in county jail for possession of drug paraphernalia, to run concurrently. The court also ordered $300 in unspecified costs, $300 in public defender fees and $100 for F.D.L.E. testing of the cocaine.
Appellant maintains that the officer's physical force in grabbing him converted the initial consensual encounter into a stop that required a founded suspicion on the part of the officer to validate the subsequent seizure of contraband. See § 901.151, Fla.Stat. (1995); Lang v. State, 671 So.2d 292 (Fla. 5th DCA 1996). He argues that since the officer did not see appellant committing a crime or suspect that appellant had committed or was about to commit a crime, he did not have the required founded suspicion to stop him.
*862 Although we agree with appellant that the initial encounter was consensual and that the officer's physical force in grabbing appellant converted that consensual encounter into a stop, we do not agree with him that the officer lacked a founded suspicion to effect the stop.[1] We conclude that the officer had the required founded suspicion because, at the time that the officer grabbed appellant, he feared that appellant was about to shoot him and thus commit a crime. The only question is whether this fear was a reasonable belief considering the totality of the circumstances as interpreted in light of the officer's knowledge. See Saadi v. State, 658 So.2d 112 (Fla. 2d DCA 1995); Brown v. State, 636 So.2d 174 (Fla. 2d DCA 1994).
We conclude that the officer's belief was reasonable under these circumstances in light of the officer's knowledge at the time. Although the officer had not seen a weapon or been warned that appellant was armed, he had come upon appellant, who was dazed and confused, standing in the middle of the street. Appellant was unresponsive and was acting oddly. He appeared transfixed by the retreating figure of another man. When the officer was finally able to get appellant's attention, appellant began slowly backing away, putting his hands in his pockets. When asked not to do that, appellant then tried to reach behind his back despite the officer's repeated requests that appellant remove his hands from his pockets and refrain from putting his hands behind him.
As the United States Supreme Court stated in Maryland v. Wilson, ___ U.S. ___, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997), "reasonableness `depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers.'" Id., at ___, 117 S.Ct. at 885. In this instance, where the officer is conducting a consensual citizen encounter out of ostensibly humanitarian motives, and while attempting to discern the problem, makes a reasonable request of the individual not to put his hands in his pockets or behind his back, and the individual repeatedly refuses to comply with the officer's requests, the individual's right to personal security free from arbitrary interference is outweighed by the public interest in officer safety. Indeed, the officer's "interference" here was not arbitrary; it was borne out of a genuine concern for his own safety based on appellant's repeated refusal to keep his hands in plain sight. In this setting, we believe that the intrusion on appellant's personal freedom was "de minimis."
To conclude otherwise would require officers to disregard potential danger to themselves. A law enforcement officer faced with circumstances, not of the officer's creation, which cause the officer to have a reasonable suspicion or fear that a person encountered may be armed with a weapon that could jeopardize the officer's safety is entitled to take such minimum action as will allay the officer's safety concerns. Those permissible actions would include asking the person encountered to take whatever reasonable action might be necessary to ensure that no weapon is involved. Similarly, the officer also would be entitled to physically take whatever reasonable action was necessary to thwart any threatening actions by the person encountered so as to dispel any reasonable fear of harm.
We do not believe that law enforcement officers should be required to expose themselves and the public to the possibility of injury during the time required to investigate a situation which it is their duty to investigate. In the instant case, the officer would have been derelict in his duty had he not stopped to inquire of appellant what he was doing standing in the middle of the road. The officer was merely acting prudently for the safety of the individual and the protection of the surrounding neighborhood. However, once appellant began taking evasive actions that appeared likely to expose the officer to potential danger, the officer was justified in requiring appellant to keep his hands in plain sight for the officer's own safety. Compare Sapp v. State, 592 So.2d 786 (Fla. 2d DCA 1992). Accordingly, we agree with the trial *863 court that the stop was valid and that the items were properly seized.[2]
However, we do find error in the court's imposition of F.D.L.E. costs and a public defender lien. Although the court did orally pronounce the F.D.L.E. cost of $100 to pay for the cost of testing the drugs, this was not sufficient under Reyes v. State, 655 So.2d 111 (Fla. 2d DCA 1995), which requires that all costs of prosecution under section 939.01, Florida Statutes (1991) be expressly requested by a specific agency with adequate supporting documentation. Nothing in the record indicates that the costs were expressly requested by F.D.L.E. or supported by documentation of any type. Neither is any statutory authority for the costs cited in the judgment. Accordingly, the F.D.L.E. costs must be stricken.
The court also erred in imposing the $300 public defender fee. Appellant was not given the opportunity to object to the amount of the fee. This was error. Trice v. State, 655 So.2d 1270 (Fla. 2d DCA 1995). On remand, appellant shall be given thirty days from the date of the mandate to file a written objection to the amount assessed. If an objection is filed with the trial court, the assessment shall be stricken and a new assessment shall not be imposed without notice and hearing under Florida Rule of Criminal Procedure 3.720(d)(1).
QUINCE and WHATLEY, JJ., concur.
NOTES
[1] We note parenthetically that the officer's request to appellant, for officer safety, to remove his hands from his pockets did not transform the encounter into a stop. See State v. Woodard, 681 So.2d 733 (Fla. 2d DCA 1996).
[2] This case may be distinguished from Doctor v. State, 596 So.2d 442 (Fla.1992), where the court announced the rule that during the course of a legitimate frisk for weapons, police may only seize weapons or objects which reasonably could be weapons, despite the fact that the officer may reasonably suspect that the object may be evidence of a crime. However, the officer in Doctor saw what he believed was a weapon, and told the defendant to remove whatever was in his pants. When the defendant refused, the officer performed a pat-down and realized the object was not a weapon. He believed it to be rock cocaine and seized it. The Doctor court held that under the totality of the circumstances, the officer had probable cause to seize the cocaine. However, during a weapons frisk, as here, although the officer may only seize weapons, he may also seize contraband in plain view. Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993) [if police are lawfully in a position to view an object, if its incriminating character is immediately apparent, and if officers have lawful right of access to object, they may seize it without a warrant]. The officer here was lawfully in a position to view the cocaine pipe, and he testified that it was immediately apparent to him that the item was contraband.