737 So.2d 1182 (1999)
Randy HINES, Appellant,
v.
STATE of Florida, Appellee.
No. 98-2535.
District Court of Appeal of Florida, First District.
July 15, 1999.
*1183 Nancy A. Daniels, Public Defender; Glen P. Gifford, Assistant Public Defender, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General, and J. Ray Poole, Assistant Attorney General, for Appellee.
BROWNING, J.
Randy Edward Hines appeals a judgment and sentence entered upon his plea of no contest to the third-degree felony of possession of cannabis (marijuana), with intent to sell, within 1,000 feet of a school. Defense counsel moved to suppress the cannabis as the product of an unlawful search. After an evidentiary hearing, the trial court denied the motion to suppress. Upon entering the plea, Hines reserved the right to appeal the denial of his motion, which the trial court agreed is dispositive. The trial court accepted the plea and imposed a guidelines sentence of 30 months in prison, concurrent to any other sentence, plus court costs. Hines contends that the trial court erred as a matter of law in relying upon Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), and King v. State, 696 So.2d 860 (Fla. 2d DCA 1997), to support the denial of his motion. Upon a careful review of the record as well as the applicable Florida statute and case law, we conclude that the trial court reversibly erred in denying the motion to suppress evidence that was the direct product of an unlawful search. Accordingly, we reverse the judgment and sentence and remand with directions that Hines be discharged.
*1184 A trial court's ruling on a motion to suppress is a mixed question of fact and law. The standard of review of the findings of fact is whether competent, substantial evidence supports the findings. Findings of historical fact should be reviewed only for "clear error", with "due weight to be accorded to inferences drawn from those facts" by the lower tribunal. Ornelas v. United States, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996); C.G. v. State, 689 So.2d 1246, 1248 (Fla. 4th DCA 1997). We must construe all the evidence, and reasonable inferences therefrom, in a manner most favorable to sustaining the trial court's ruling. Owen v. State, 560 So.2d 207, 211 (Fla.1990). We review the trial court's application of the law to the facts de novo. Ornelas, 517 U.S. at 699, 116 S.Ct. 1657; United States v. Harris, 928 F.2d 1113, 1115-16 (11th Cir.1991). As the appellant, Hines bears the burden of demonstrating "prejudicial error" pursuant to section 924.051(7), Florida Statutes (1997).

The Facts
The events surrounding the search of Hines are not materially disputed. The State's only witness at the suppression hearing was Michael Simmons, a deputy sheriff with the Escambia County Sheriff's Office. He testified that sometime after 11:00 P.M. on December 19, 1997, he was patrolling alone in what he characterized as "a high narcotics area" known for marijuana and crack cocaine deals and violent, drug-related incidents involving shootings and beatings. At a location within 1,000 feet of an elementary school, he observed a vehicle parked in the center of the street, with the motor running and no lights on. The car was positioned so that no one could drive around it. The area was pitch black except for the illumination from the headlights of the patrol vehicle. From his past observations of the narcotics trade, Deputy Simmons knew that it is fairly common for someone interested in transacting a drug deal simply to stop the vehicle, turn off the lights, and wait until someone else approaches. Simmons stopped to investigate the situation. He exited his patrol car and observed Keith Oliver standing off to the side of the stationary vehicle.
At the deputy's request, Oliver produced his driver's license and said that the vehicle was his. Oliver indicated that he had just moved his vehicle to let another one pass by. When he was asked whether his driver's license was valid, Oliver answered that it was suspended.[1]
Simmons then pointed his flashlight at the driver's side of Oliver's car and observed Hines in the passenger's seat. As the deputy talked to him, Hines appeared to be very nervous and kept trying to place his right hand into his pocket. Although Simmons asked to see Hines' hands and told him not to put them in his pockets where Simmons could not see them, Hines disregarded these instructions. Simmons testified that he did not know why Hines was trying to place his hand in his pocket. Simmons testified that as he was trying to keep an eye on both men under the unusual circumstances, he was concerned mainly about a possible gun or other weapon. The deputy immediately went around to Hines' side and removed him from the vehicle, while Oliver remained standing in front of the car.
Facing Hines outside the car, the deputy asked whether he was carrying anything that he was not supposed to have, such as a weapon. Hines failed to answer, and he kept trying to put his hand in his pocket despite Simmons' repeated requests not to do so. At the direction of Simmons, who still was concerned about a possible weapon, Hines turned around and placed his hands upon the car. The deputy immediately grabbed the back of Hines' pants and reached directly into the pocket where Hines had been placing his hand. Simmons *1185 felt a cloth bag inside the pocket containing plastic bags, inside which he could feel "a leafy substance." The deputy, who admittedly realized that the object he felt was not a weapon, then removed the cloth Crown Royal bag, which held 17 small, individually packaged plastic baggies and one large baggie containing a total of 39.1 grams of cannabis.
On cross-examination, Simmons testified that he could not see the bag or anything else inside Hines' pocket before searching him. Simmons admitted having no idea what was inside the pocket. On the night in question, Hines was wearing a big gray jacket over his pants. The deputy indicated that his main concern was a weapon, for he did not understand why Hines kept ignoring the request to keep his hand out of the pocket. Simmons said that he wanted to get his hands upon whatever Hines kept trying to grab inside the pocket.

The Law
At the end of the testimony, defense counsel argued that in reaching inside Hines' pocket, Deputy Simmons went beyond his authority to conduct a limited, exterior pat-down search for weapons. However, the trial court adopted the State's suggestion that the search of the pocket was proper, based on the "plain feel" doctrine in Dickerson, 508 U.S. at 366, 113 S.Ct. 2130, and on the facts and holding in King, 696 So.2d at 860. We conclude that the lower tribunal's reliance upon these two factually distinguishable decisions, and its determination that the search was lawful, constitute a misapplication of the law to the essentially undisputed facts.[2]
The deputy's initial encounter with Oliver and Hines did not result from a literal physical stop of their vehicle, as the car already was stationary, without illumination and in a position straddling the dark road where other drivers could not safely get around it. Rather, Simmons' contact with the two individuals was more in the nature of an investigatory detention. Clearly, Simmons would have been remiss in his duty as a law enforcement officer if he had not stopped to investigate the situation further based on his knowledge of these facts: 1) there were obvious potential road hazards arising from the location of the vehicle in the middle of the street with no lights and no surrounding illumination; 2) Oliver was standing outside the vehicle under circumstances suggesting that he might need assistance; 3) it was nearly midnight, and the neighborhood had a reputation as a high-crime area rife with drug transactions and attendant violence; and 4) from his training and experience, the deputy recognized that some persons intent on engaging in narcotics transactions sit in dark vehicles waiting for a prospective drug trader to appear. King, 696 So.2d at 861-62 (where patrol officers noticed seemingly disoriented defendant standing in middle of road at 7:30 P.M., they would have been derelict in their duty had they not stopped to investigate the situation).
The request for Oliver's name and driver's license amounted to no more than a consensual police-citizen encounter independent of the Fourth Amendment. Florida v. Bostick, 501 U.S. 429, 438, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991); State v. Baldwin, 686 So.2d 682, 685 (Fla. 1st DCA 1996); State v. Barnett, 572 So.2d 1033 (Fla. 2d DCA 1991) (officer's request for defendant's driver's license and vehicle identification data constituted police-citizen encounter that did not trigger protections of Fourth Amendment). Hines notes, however, that where an officer stops a vehicle in order to issue a non-criminal traffic citation, and there is no suspicion of criminal activity, the officer may not, without more information, detain the individual(s) longer than is reasonably necessary to issue a citation. Cresswell v. State, 564 *1186 So.2d 480 (Fla.1990); E.H. v. State, 593 So.2d 243 (Fla. 5th DCA 1991) (officer's pat-down search of passenger in vehicle stopped for issuance of traffic citation was improper, absent any indication or suspicion of criminal activity; defendant's mere act of reaching into his pocket did not justify officer's belief that defendant was armed with dangerous weapon).
Given the particular circumstances of his initial encounter with Oliver and Hines, the deputy, acting without back-up support, was justifiably concerned about keeping them within his line of sight and under control as he investigated why they were there under suspicious, possibly hazardous circumstances. Upon shining his flashlight upon Hines, Simmons noticed that Hines was very nervous and kept reaching for or grabbing his pocket. Asking Hines to get out of the vehicle represented a de minimis intrusion upon him, as did the request for Hines not to place his hands where the deputy could not see them. King, 696 So.2d at 862 & n. 1 (officer's safety-minded request that defendant remove his hands from his pockets was a minimal intrusion on defendant's personal freedom and "did not transform the encounter into a stop"); State v. Woodard, 681 So.2d 733 (Fla. 2d DCA 1996); cf. Evans v. State, 546 So.2d 1125 (Fla. 3d DCA 1989) (where officer casually encountered defendant sitting on park bench at 4:00 A.M. and, for safety reasons, asked defendant to take his hands out of his pockets, during which removal a small packet of cocaine dropped to the ground, a reasonable person in defendant's situation would not have believed he was free to disobey officer; contraband, which was not abandoned, should have been suppressed). Despite the deputy's repeated instructions, Hines persisted in putting his hand in or near his pocket. Simmons testified that Hines' actions made him wonder why Hines was deliberately ignoring his repeated requests, and Hines' nervousness raised a concern that he might be carrying a weapon. Nothing in the record indicates that the deputy observed anything upon Hines' person, e.g., a bulge, that would have suggested a weapon. Baggett v. State, 531 So.2d 1028 (Fla. 1st DCA 1988) (stop and pat-down of defendant, which disclosed loaded firearm, were unjustified products of illegal detention, where officer testified that he stopped defendant, who looked "suspicious" and young enough to be runaway and wore dark clothing at 1:45 A.M. in neighborhood subject to recent break-ins). Cf. Richardson v. State, 599 So.2d 703 (Fla. 1st DCA 1992) (trial court properly determined that exterior patdown frisk was justifiable after valid traffic stop, where defendant became extremely nervous after being stopped and questioned as to whether he had weapons, and safety-minded officer observed bulge underneath untucked shirt in back of defendant's waist) and Black v. State, 642 So.2d 1147 (Fla. 2d DCA 1994) (officers who stopped pedestrian/defendant after noticing him in same area 30-45 minutes later around 8:00 P.M., saw defendant opening his eyes wide and reaching into his right pocket, and ordered him to remove his hand, after which defendant ran away, lacked any reasonable fears for safety or any other proper basis for stop; cocaine seized after pursuing officer tackled defendant should have been suppressed).
A pat-down or frisk transforms a consensual police-citizen encounter into a "stop," which is subject to "closer scrutiny." Cubby v. State, 707 So.2d 351 (Fla. 2d DCA 1998) (where defendant and companion emerged from behind garage, walked into alley at 4:30 P.M. in area known for narcotics activity, and appeared surprised as they passed police cruiser, patrolman lacked reasonable suspicion of involvement in any criminal activity and lacked probable cause to believe subjects were armed threats so as to justify a protective pat-down); J.B. v. State, 679 So.2d 1296 (Fla. 2d DCA 1996) (stop and patdown were improper where police, acting on tip from confidential informant that a named, described subject was in possession of large amount of rock cocaine in a named location known for cocaine sales, *1187 observed defendant standing 10 feet away from subject, saw defendant put his hands in his pockets and step back, and grabbed defendant's arm and patted down his pockets; police lacked evidence connecting defendant with drug dealing or other criminal activity). Even if we assume, without having to decide in this case, that pursuant to the Florida Stop and Frisk Law, section 901.151(5), Florida Statutes (1997), Deputy Simmons had "probable cause," i.e., a reasonable belief, to believe that Hines was armed and dangerous, the deputy exceeded his constitutional authority by immediately reaching directly into Hines' pocket and removing the contraband.[3] A lawful stop does not, of itself, justify a frisk. Johnson v. State, 537 So.2d 117, 119 (Fla. 1st DCA 1988) (although initial stop and temporary detention of vehicle in which defendant was passenger was legitimate traffic stop arising from vehicle's obstruction of traffic flow, facts did not give rise to proper basis for frisk, where evidentiary record failed to show probable cause that occupants were armed and dangerous).
In its venerable decision in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court set out the parameters of police conduct under analogous circumstances:
[W]here a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him. Such a search is reasonable under the Fourth Amendment, and any weapons seized may properly be introduced in evidence against the person from whom they were taken.
392 U.S. at 30-31, 88 S.Ct. 1868.[4]
Applying Terry to the instant case, and assuming that Deputy Simmons reasonably believed that Hines was armed and dangerous, we conclude that the deputy overstepped lawful bounds by not performing a Terry-style protective frisk, i.e., a limited exterior pat-down of Hines' clothing solely to search for weapons, before determining that more intrusive action was necessary. Sanders v. State, 732 So.2d 20, 24 Fla. L. Weekly D1065 (Fla. 1st DCA 1999) (absent additional circumstances that would permit a more complete search, consent to mere pat-down does not include consent to reach into suspect's pockets and to retrieve contents); T.W.C. v. State, 666 So.2d 217 (Fla. 2d DCA 1995) (where deputy properly stopped vehicle in which juvenile was passenger, based on vehicle's expired tag, and "nervous" and "fidgeting" juvenile failed to answer deputy's question about contraband and immediately reached into his own front pocket, deputy exceeded his authority under Terry by reaching into juvenile's pocket and grabbing small drug-type pipe, where deputy's prior touching of juvenile's outer clothing had provided no reasonable belief that he carried weapon); Thomas v. State, 644 So.2d 597 (Fla. 5th DCA 1994) (pat-down search, performed after officer stopped defendant for noncriminal traffic infraction and issued citation, did not give rise to probable cause for officer to reach into defendant's pocket *1188 and seize piece of crack cocaine); Thompson v. State, 551 So.2d 1248 (Fla. 1st DCA 1989) (officer who pats down defendant's outer clothing after temporary stop, based on suspicion that he may be armed with dangerous weapon, may not continue to search inside defendant's shoe in hope of finding contraband unless officer reasonably believes object concealed might be weapon). Instead, Simmons skipped the pat-down and reached directly into Hines' pocket as Hines faced the other way with his arms outstretched upon the car. This search was unreasonable and illegal. Felix v. State, 566 So.2d 342 (Fla. 2d DCA 1990) (officer exceeded scope of pat-down when he turned defendant's pockets inside out and found piece of rock cocaine); Walker v. State, 514 So.2d 1149 (Fla. 2d DCA 1987) (defendant's quick, furtive movement as if to conceal something in high-crime area near site of numerous drug arrests did not provide articulable "founded suspicion" to justify temporary detention and search; officer's act of pulling hard object out of defendant's back pocket during ensuing frisk, where officer knew object was a pipe and not a weapon, exceeded constitutional authority).
The trial court denied the motion to suppress in reliance upon Dickerson and King. Given our conclusion that Deputy Simmons had no lawful justification, under the surrounding circumstances, to reach in, grab, and remove the bag from Hines' pocket, it logically follows that the exception to the warrant requirement set forth in Dickerson did not apply here and did not validate the search. Specifically, in Dickerson, the United States Supreme Court recognized the so-called limited "plain feel" exception.[5] A review of the facts in Dickerson reveals why it is distinguishable.
After conducting a legitimate pat-down that revealed no weapon, an officer felt a small lump in the front pocket of Dickerson's nylon jacket. Although the item was concealed from view, the officer testified that after "examining" it with his fingers, he believed it was a lump of crack cocaine in cellophane. The officer reached into the pocket and removed one-fifth of one gram of crack cocaine. Dickerson was arrested and charged with possession of a controlled substance, which he moved to suppress. 508 U.S. at 369, 113 S.Ct. 2130. The trial court denied Dickerson's motion to suppress, and explained its reasoning:
To this Court there is no distinction as to which sensory perception the officer uses to conclude that the material is contraband. An experienced officer may rely upon his sense of smell in DWI stops or in recognizing the smell of burning marijuana in an automobile. The sound of a shotgun being racked would clearly support certain reactions by an officer. The sense of touch, grounded in experience and training, is as reliable as perceptions drawn from other senses. "Plain feel," therefore, is no different than plain view and will equally support the seizure here.
Id. at 369-70, 113 S.Ct. 2130.
After the Minnesota Court of Appeals reversed the conviction upon finding the stop and frisk valid, but the seizure unconstitutional, and the Minnesota Supreme Court affirmed that ruling, the United States Supreme Court accepted certiorari to resolve a conflict "over whether contraband detected from the sense of touch. during a patdown search may be admitted into evidence." Id. at 370-71 & n. 1, 113 S.Ct. 2130. The Court affirmed, finding that the officers did not determine that the object in Dickerson's pocket was contraband *1189 from the pat-down, but discovered it only after conducting "a further search" that exceeded the scope permitted under Terry. Thus, the seizure was unconstitutional. Id. at 378-79, 113 S.Ct. 2130.
Assuming that Deputy Simmons would have been justified in performing a patdown of Hines' outer clothing, which he failed to do, Hines has noted that the deputy, instead, immediately reached into Hines' pocket and removed the contraband, admittedly with no idea of what the item was until the contraband was extracted. Thus, the seizure was unconstitutional, and the trial judge erred by denying Hines' motion to suppress. Jordan v. State, 664 So.2d 272 (Fla. 5th DCA 1995) (no factual basis existed, pursuant to "plain feel" doctrine, to approve officer's seizure of crack cocaine from inside defendant's pocket during consensual pat-down, where officer never testified that he had seen crack cocaine prior to seizing it from defendant, that he could detect crack cocaine based upon his tactile experience, or that he had training or personal experience or had made any prior arrests involving crack cocaine).
As with Dickerson, King is not a proper legal basis for denying Hines' motion to suppress. In that case, in the course of a lawful police-citizen encounter, an officer observed and recognized in plain view a "crack pipe" protruding from King's rear waistband. Under those circumstances, the officer was legally justified in seizing the contraband. King's conviction and sentence were affirmed. 696 So.2d at 862-63 & n. 2.
Unlike the "crack pipe" in King, the contraband in Hines' possession was not visible. In fact, Deputy Simmons had no idea that Hines possessed contraband until he removed it from Hines' pocket after exceeding his authority to search pursuant to Terry. For the reasons set forth above, we REVERSE Hines' conviction and sentence and REMAND with instructions that he be discharged.
ERVIN and VAN NORTWICK, JJ., CONCUR.
NOTES
[1] Oliver was not arrested for driving with a suspended license. Deputy Simmons testified that Oliver told Simmons that he was not driving the stopped vehicle, and Simmons never saw him driving it.
[2] In accordance with the Conformity Clause in Article I, section 12, of the Florida Constitution, this "search and seizure" issue is subject to the applicable United States Supreme Court precedents. Holland v. State, 696 So.2d 757, 759 (Fla.1997); Perez v. State, 620 So.2d 1256 (Fla.1993).
[3] In the context of an investigatory search for weapons, "probable cause" is not equivalent to the higher "probable cause" standard necessary to justify a search warrant. Rather, an officer need simply have a reasonable belief that the individual is armed and dangerous. State v. Webb, 398 So.2d 820, 824-25 (Fla. 1981); State v. Burns, 698 So.2d 1282, 1284 (Fla. 5th DCA 1997); Daniels v. State, 543 So.2d 363 (Fla. 1st DCA 1989).
[4] The Florida Stop and Frisk Law, section 901.151, Florida Statutes, is a codification of Terry.
[5] The Fourth Amendment of the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Searches and seizures "conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendmentsubject only to a few specifically established and well delineated exceptions." Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).