On Motion for Rehearing
PER CURIAM.
On consideration of appellant’s motion for rehearing, we withdraw the opinion dated October 17, 2001, and substitute the following opinion.
D.N. appeals his delinquency disposition following the denial of a dispositive motion to suppress. We affirm.
The State charged D.N. by petition of delinquency with possession of marijuana. D.N. filed a motion to suppress the marijuana and a hearing was held on the matter. Miami Police Officer George Alvarez testified that while working the midnight shift, at 1:30 a.m., he noticed a white vehicle traveling east on Flagler Street towards 107th Avenue. The vehicle, in which D.N. was a passenger, rolled through a red light while making a right hand turn. The officer put his emergency lights on and over the loudspeaker ordered the vehicle to stop.
The car kept traveling and turned left on S.W. 8th Street. It began to weave and travel faster. The driver then turned into an apartment complex, turned his lights off and drove down a dead end in the complex parking lot. Officer Alvarez got out of the car with his weapon drawn and ordered D.N., to step out of the car and put his hands in the air. The officer testified:
As soon as the driver got to the rear of the vehicle, had his hands on the car, I called for the passenger to step out of the car.
The passenger got out of the car. I said let me see your hands. As he motioned to put his hands up, in the right hand I noticed an object fall to the ground right next to him.
I told him to keep your hands up, walk towards me. Same instructions *65 that I gave the driver. Turn around, put your hands on the vehicle.
The officer specifically stated that he had told the driver and D.N. to put then-hands where he could see them because he feared for his own safety. A second officer arrived and was instructed to keep an eye on the two subjects. Officer Alvarez went around the passenger side of the vehicle and saw a small baggie on the ground, containing what appeared to be marijuana. The officer retrieved the baggie, arrested the driver for fleeing, and arrested D.N. for possession.
D.N. argued for suppressing the evidence. Ignoring the illegal attempt to elude police, D.N. maintained that based on a simple traffic infraction, the officer could not, at gunpoint, order him to put his hands in the air.[1] The trial court denied D.N.’s motion to suppress. The court found the motion dispositive and permitted D.N. to plead no contest to the charges, reserving his right to appeal. D.N. asserts that the facts at hand were not sufficient to provide the requisite founded suspicion for an investigatory stop and detention. Thus, he maintains, the evidence obtained should have been suppressed. We disagree.
A “seizure” occurs when one’s freedom of movement has been restrained, either by physical force or a showing of authority, so that the surrounding circumstances demonstrate a reasonable person would not have felt free to leave. See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); J.C.W. v. State, 545 So.2d 306, 307 (Fla. 1st DCA 1989). D.N. was seized, as Officer Alvarez’s order for him to put up his hands was a directive that he was not free to disregard. See Dees v. State, 564 So.2d 1166, 1168 (Fla. 1st DCA 1990). To justify such a seizure, a law enforcement officer must have a founded suspicion of criminal activity. See § 901.151, Fla. Stat. (2000)(Florida’s Stop and Frisk Law). A founded suspicion requires a “factual basis in the circumstances observed by the officer.” Gipson v. State, 537 So.2d 1080, 1081 (Fla. 1st DCA 1989). As stated in Curry v. State, 532 So.2d 1316, 1317-18 (Fla. 1st DCA 1988), an officer’s assessment of the circumstances in their totality “must raise a suspicion that the particular individual being stopped is engaged in wrongdoing.”
The officer in this case was fully authorized to stop the vehicle in which D.N. was a passenger. The officer had probable cause to arrest the driver (but not the passenger) for the offense of fleeing and eluding a police officer in violation of section 316.1935, Florida Statutes (2000).[2]
The United States Supreme Court has held that in order to protect officer safety, a law enforcement officer conducting a traffic stop may order any passenger, as well as the driver, to exit the vehicle during the traffic stop.
On the public interest side of the balance, the same weighty interest in officer safety is present regardless of whether the occupant of the stopped car is a driver or passenger. Regrettably, traffic stops may be dangerous eneoun- *66 ters. In 1994 alone, there were 5,762 officer assaults and 11 officers killed during traffic pursuits and stops....
On the personal liberty side of the balance, the case for the passengers is in one sense stronger than that for the driver. There is probable cause to believe that the driver has committed a minor vehicular offense, but there is no such reason to stop or detain the passengers. But as a practical matter, the passengers are already stopped by virtue of the stop of the vehicle. The only change in their circumstances which will result from ordering them out of the car is that they will be outside of, rather than inside of, the stopped car. Outside the car, the passengers will be denied access to any possible weapon that might be concealed in the interior of the passenger compartment. It would seem that the possibility of a violent encounter stems not from the ordinary reaction of a motorist stopped for a speeding violation, but from the fact that evidence of a more serious crime might be uncovered during the stop. And the motivation of a passenger to employ violence to prevent apprehension of such a crime is every bit as great as that of the driver.
[[Image here]]
In summary, danger to an officer from a traffic stop is likely to be greater when there are passengers in addition to the driver in the stopped car. While there is not the same basis for ordering the passengers out of the car as there is for ordering the driver out, the additional intrusion on the passenger is minimal. We therefore hold that an officer making a traffic stop may order passengers to get out of the car pending completion of the stop.
Maryland v. Wilson, 519 U.S. 408, 412-15, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997) (footnotes and citation omitted).[3]
The entire point of Maryland v. Wilson is that the officer can take the step of ordering the passenger and driver out of the car in order to protect the safety of the officer during the traffic stop. As a matter of common sense, and as the officer testified below, it is possible for someone to conceal a weapon inside a closed fist. It logically follows that the officer may order the passenger and driver to place their hands where the officer can see them, and if (as in this case) the passenger’s hands are closed, the officer can order that the hands be opened.
The officer in this case was acting well within the latitude given him by Maryland v. Wilson in ordering the passenger to open his hands. See Brown v. State, 734 So.2d 1174, 1175 (Fla. 2d DCA 1999) (officer could order driver to open her hand so as to determine that she was not holding a weapon); State v. Louis, 571 So.2d 1358, 1359 (Fla. 4th DCA 1990) (officer could order passenger to take hands out of jacket); see also United States v. Moorefield, 111 F.3d 10, 12-13 (3d Cir.1997) (officer could order passenger to remain in car with hands in air); Warr v. State, 580 N.E.2d 265, 266-68 (Ind.Ct.App.1991) (officer could order passenger to place hand in officer’s view).[4] D.N. relies on Bowe v. State, 720 So.2d 1083 (Fla. 3d DCA 1997), but that case does not involve a traffic stop to which Maryland v. Wilson applies.
*67 Finally, we point out the officer in this case did not perform a pat down or frisk. D.N. was told simply to get out of the car — clearly permissible — and open "his hands — the least intrusive instruction that could ensure the officer’s immediate safety. See Hines v. State, 737 So.2d 1182 (Fla. 1st DCA 1999)(asking defendant to get out of the vehicle represented' a de minimis intrusion upon him, as did the request for defendant not to place his hands where the deputy could not see them); King v. State, 696 So.2d 860, 862 & n. 1 (Fla. 2d DCA 1997)(observing officer’s safety-minded request that defendant remove his hands from his pockets was a minimal intrusion on defendant’s personal freedom).
In sum, finding that the motion to suppress was properly denied, we affirm the adjudication of delinquency.

. D.N. also argued that he and the driver had not attempted to elude the police.

. The officer also testified that he intended to investigate why the fleeing took place, since such unexplained flight can often be an indication that the inhabitants of the vehicle had just participated in other criminal activity. We need not explore the investigative stop issue in this opinion, but note that in the case relied on by D.N., Wilson v. State, 734 So.2d 1107 (Fla. 4th DCA 1999), the deputy conceded that he did not intend to conduct any investigative questioning of passenger.

. In Maryland, v. Wilson, the officer attempted to stop a car which was speeding and had no regular license tag. The car continued to drive for a mile and one-half after the state trooper had activated his lights and siren.

. The State in its brief conceded that the officer could not order the passenger to open his hands unless the officer had additional facts leading to a reasonable suspicion that the passenger had committed a crime. We do not accept the State’s concession.