946 So.2d 575 (2006)
Keith DAVIS, Appellant,
v.
STATE of Florida, Appellee.
No. 1D05-5707.
District Court of Appeal of Florida, First District.
December 18, 2006.
*576 Nancy A. Daniels, Public Defender, and Archie F. Gardner, Jr., Assistant Public Defender, Tallahassee, for Appellant.
Charlie Crist, Attorney General, and Anne C. Conley, Assistant Attorney General, Tallahassee, for Appellee.
WEBSTER, J.
Arguing that the trial court erroneously denied his dispositive motion to suppress, appellant seeks review of his conviction for possession of marijuana with intent to sell, manufacture or deliver it. We agree that a seizure occurred for Fourth Amendment purposes when appellant was "asked" by a sheriff's deputy to exit the car in which he had been a passenger and put his hands on the car's roof, so that appellant's immediately ensuing "consent" to a search of his person was no more than a submission to authority. As a result, the marijuana found during the search should have been suppressed. Because this issue is dispositive of the case, we reverse and remand with directions that the trial court enter an order discharging appellant.
Viewed in a light most favorable to the state, the facts are as follows. At approximately 7:15 p.m. on the evening of November 13, 2004, a car in which appellant was a passenger was stopped by a uniformed Escambia County sheriff's deputy because it had run a stop sign. A second deputy arrived to assist. The car was a rental, with a Maryland tag. Upon request, the driver produced the rental contract and his driver's license. The deputy asked appellant for identification. Appellant said he did not have his license with him, but gave his correct name. Finding nothing out of order, instead of giving the driver a citation and permitting the car to proceed on its way, the deputy asked the driver "if he *577 had anything illegal on his person or in the car." The driver responded that he did not, whereupon the deputy asked for consent to search the car. The driver gave his consent. The deputy then walked to the passenger side of the car, and "asked" appellant to step out so that he might search the car. As soon as appellant opened the door, the deputy "asked" appellant to "place his hands on top of the car." While appellant was in that position, the deputy asked if appellant "had anything illegal on his person." Appellant responded that he did not, whereupon the deputy "asked for consent to search his person." Appellant gave his consent, whereupon the deputy proceeded to frisk him. During the frisk, a bag fell out of appellant's pant leg. The deputy asked what was in the bag, and appellant responded that it contained a quarter pound of marijuana. At that point, appellant was arrested, and the driver was given a citation for running a stop sign. It is undisputed that, until appellant had been frisked, the deputy had no reason to believe that appellant had committed any crime, or that he was armed.
Appellant was subsequently charged with selling, manufacturing or delivering marijuana, or possessing marijuana with intent to sell, manufacture or deliver it. He filed a motion to suppress, arguing that, when he was "asked" to get out of the car and put his hands on the roof, he was "seized" for Fourth Amendment purposes because a reasonable person in that position would not have felt free to leave. Accordingly, he further argued that the "consent" to search his person which was given while he was standing with his hands on the roof of the car was nothing more than a submission to authority and, therefore, the marijuana found during the search must be suppressed. The state responded that appellant had not been seized at any time prior to his consent to search, and that, therefore, his consent was voluntary. The trial court agreed with the state, holding that appellant's consent had been voluntary and, accordingly, denying the motion to suppress. Appellant subsequently pled guilty as charged, and was sentenced to one year and a day in state prison. The parties and the trial court all agreed that the ruling on the motion to suppress was dispositive for appellate purposes. This appeal follows.
Our supreme court has said that
appellate courts should . . . accord a presumption of correctness to the trial court's rulings on motions to suppress with regard to the trial court's determination of historical facts, but . . . must independently review mixed questions of law and fact that ultimately determine constitutional issues arising in the context of the Fourth and Fifth Amendment and, by extension, article I, section 9 of the Florida Constitution.
Connor v. State, 803 So.2d 598, 608 (Fla. 2001) (footnote omitted) (relying on Ornelas v. United States, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996), and Thompson v. Keohane, 516 U.S. 99, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995)). Thus, when determining whether a defendant had been seized for Fourth Amendment purposes at the time he or she consented to a search, appellate courts must give deference to the trial court's findings as to historical facts, but they are obliged to review de novo both the choice of law and the application of that law to the facts. Id. (citations omitted).
There is no suggestion in this case that the search of appellant's person may be justified by either reasonable suspicion or probable cause. The search must stand or fall on the validity of the consent given by appellant. As our supreme court has held,

*578 when consent is obtained after illegal police activity such as an illegal search or arrest, the unlawful police action presumptively taints and renders involuntary any consent to search. . . . The consent will be held voluntary only if there is clear and convincing proof of an unequivocal break in the chain of illegality sufficient to dissipate the taint of prior official illegal action.
Norman v. State, 379 So.2d 643, 646-47 (Fla.1980) (citations omitted). Because appellant's consent to the search occurred immediately after the claimed seizure, it is clear that, if there was an illegal seizure, there was no break "sufficient to dissipate the taint" of that seizure, and the state does not argue otherwise. See Ippolito v. State, 789 So.2d 423, 426 (Fla. 4th DCA 2001). Accordingly, we must determine whether appellant was seized for Fourth Amendment purposes when he was "asked" to put his hands on the roof of the car. Because the state has essentially conceded that the deputy did not have probable cause to seize appellant until he frisked appellant and found the marijuana, if appellant was seized at that point, the resulting search was illegal, and the marijuana should have been suppressed.
Although not free of difficulty in application, the test to be applied to determine whether a particular encounter amounts to a seizure for Fourth Amendment purposes is now well established"to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." Florida v. Bostick, 501 U.S. 429, 439, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). Common sense leads us to conclude that a reasonable person told by an armed, uniformed deputy to exit a vehicle and place his or her hands on the roof of the vehicle would not feel free to decline and walk away. Other courts have reached the same conclusion. See, e.g., United States v. Brown, 401 F.3d 588, 594-95 (4th Cir.2005) (defendant was seized when he submitted to an officer's "request" that he lean toward, and place his hands on, a car); McNeil v. State, 746 So.2d 547, 548 (Fla. 5th DCA 1999) (defendant "was seized when the officer ordered him to place his hands on the back of the patrol car"); State v. Brown, 616 So.2d 124, 126 (Fla. 2d DCA 1993) (a consensual encounter turned into a "stop" when an officer told defendant to put his hands on the police cruiser). See also D.N. v. State, 805 So.2d 63, 65 (Fla. 3d DCA 2002) (defendant was seized when the officer ordered him to step out of the car and put his hands in the air). The state argues that no seizure occurred because the deputy merely "asked" appellant to exit the car and put his hands on the roof. However, our supreme court has held that whether the directive is characterized as a request or an order is not determinative; the question remains whether the directive constituted a show of authority with which a reasonable person would feel obliged to comply. Popple v. State, 626 So.2d 185, 188 (Fla.1993). Likewise, in Dees v. State, 564 So.2d 1166, 1168 (Fla. 1st DCA 1990), we said
Deputy Salter's directions to [defendant] Dees to exit the vehicle and to remove her hand from her pocket constituted a show of authority that restrained Dees' freedom of movement, because a reasonable person would conclude that she was required to comply with the officer's directives. Merely stating that the officer "asked" Dees to get out of the van and "asked" her to take her hand from her pocket, does not change the fact that these statements were directives from a *579 law enforcement officer, rather than simple requests that Dees was free to disregard.
Because appellant was illegally seized for Fourth Amendment purposes when he was directed to exit the vehicle and place his hands on the roof, the consent to search his person given while appellant was standing with his hands on the roof of the car was involuntary. Therefore, the marijuana found as a result of that search should have been suppressed, and it was error for the trial court to deny appellant's motion. Because it is clear that the trial court's ruling on the motion was dispositive, see, e.g., Brown v. State, 376 So.2d 382, 384 (Fla.1979); State v. Ashby, 245 So.2d 225 (Fla.1971); Fernandez v. State, 917 So.2d 1022, 1024 (Fla. 1st DCA 2006), we reverse appellant's conviction and remand with directions that the trial court enter an order discharging appellant.
REVERSED and REMANDED, with directions.
BENTON and VAN NORTWICK, JJ., concur.